784 F.2d 1238
 57 A.F.T.R.2d 86-1017, 54 USLW 2504, 86-1
USTC P 9278,
Unempl.Ins.Rep. CCH 16,670
 USLIFE TITLE INSURANCE COMPANY OF DALLAS on Behalf of
Lillian V. MATHEWS, Plaintiffs-Appellees,
v.
Paul R. HARBISON, et al., Defendants,
v.
UNITED STATES of America acting By and Through the INTERNAL
REVENUE SERVICE, Defendant-Appellant.
 No. 84-2754.
 United States Court of Appeals,
Fifth Circuit.
 March 14, 1986.
 
 Glenn L. Archer, Jr. U.S. Dept. of Justice, Tax Div., Washington, D.C., Michael L. Paup, Chief, Appellate Sec. Wynette J. Hewett, Teresa E. McLaughlin, Washington, D.C., for defendant-appellant.
 Edward L. Kurth, San Antonio, Tex., for plaintiffs-appellees.
 Appeal from the United States District Court for the Western District of Texas.
 Before GOLDBERG, RANDALL, and JOHNSON, Circuit Judges.
 GOLDBERG, Circuit Judge.
 An old saying has it that the art of taxation consists in so plucking the goose as to get the most feathers with the least hissing. The practice of taxation, however, is seldom pretty. In this case, appellee's hissing roused the district court to condemn the Internal Revenue Service for overzealous plucking. This condemnation took the form of an award of attorneys' fees against the Government based on the finding that the Government's zealousness was not substantially justified within the meaning of the Equal Access to Justice Act.
 
 
 1
 At the heart of this case is the duty of the IRS, under Section 6672 of the Internal Revenue Code, 26 U.S.C. Sec. 6672, to collect and retain from certain corporate officers and employees those funds that their corporation has unlawfully failed to turn over to the Government.[1] To fulfill this obligation, the IRS will assess up to 100% of the penalty against each of those persons that it determines to be responsible for the corporation's delinquency, even though the sum of the funds collected may exceed the total liability by a factor equal to the number of responsible persons. Once the Government's right to retain one full satisfaction is secure, however, its policy is to refund all amounts in excess of the total delinquency. This policy notwithstanding, appellee argued, and the district court agreed, that the Government was not substantially justified in attempting to collect a Section 6672 assessment against one responsible person when collections from that person and one other responsible person already totaled the amount of the underlying delinquent taxes.
 
 
 2
 The Government, on the other hand, contends that if it were required to halt its collection efforts at 100% of the delinquency, then it would face a shortfall if a person against whom assessments had been made later successfully exercised her right to challenge the Government's determination that she was a responsible person. The Government therefore argues that the critical question becomes not whether it has already collected an amount equal to the underlying tax, but whether its right to retain the funds collected is secure from challenge. The Government argues that this security comes only when the statute of limitations cuts off the person's right to challenge the penalty assessed against and collected from her. Because in the case at hand the statute of limitations had not yet expired, and given the government's policy of refunding any funds in excess of one full satisfaction, the government contends that it was substantially justified in continuing its collection efforts. We agree and accordingly reverse.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 The underlying tax liability in this case arose from Paul Harbison's and Delbert Walker's operation of W & H Construction, Inc., Sheppard Electric Company, a corporation that defaulted in the payment of withholding taxes in the total amount of $9,477.78 during the second and third quarters of 1976. Pursuant to 26 U.S.C. Sec. 6672, the IRS made assessments on November 13, 1978, in the full amount of the withholding taxes against Harbison and Walker as responsible persons with respect to the corporation. Neither Harbison nor Walker ever instituted a refund suit to contest his assessment, and each made payments in partial satisfaction of his liability.
 
 
 4
 On December 4, 1978, the Government filed a notice of tax lien with the County Clerk against real property owned by Harbison and his wife in Bexar County, Texas. On September 26, 1980, the Harbisons were divorced, and, pursuant to the divorce decree, they sold their property to Lilian V. Mathews and divided the proceeds. Ms. Mathews obtained title insurance from USLIFE Title Insurance Company of Dallas ("USLIFE"), which performed a title search but did not discover the tax lien because the County Clerk had misfiled the notice of tax lien against Harbison under the name Harrison. On April 30, 1982, USLIFE filed suit on behalf of Mathews against the Government and the Harbisons. USLIFE sought to restrain the Government from seizing the property by levy, to quiet title in favor of Mathews, and to recover from the Harbisons its attorney's fees and any amounts it was required to pay to satisfy the tax lien. USLIFE deposited $6,455.39 into the registry of the court, the amount which it asserted was claimed by the Government.
 
 
 5
 The Government moved for summary judgment against USLIFE on the basis that its tax lien was entitled to priority over Mathews' interest in the property, notwithstanding the failure of the County Clerk to file properly the notice of the tax lien. On August 20, 1982, the District Court granted the Government's motion.[2] On February 17, 1983, USLIFE filed a motion to reconsider the summary judgment on the grounds that the Internal Revenue Service had subsequently informed USLIFE's counsel that the full amount of the corporation's delinquent withholding taxes had already been collected from Walker.
 
 
 6
 In response, the Government admitted that, as a matter of policy, it does not retain payments exceeding the underlying withholding tax delinquency. The Government nonetheless opposed USLIFE's bid to reopen the case. It argued that in order to protect the revenue, it was justified in pursuing collection remedies against persons deemed responsible until the expiration of the statute of limitations for filing a refund claim challenging the assessment, when the Government's right to retain the amounts collected would be conclusively established. The Government represented, and the parties did not dispute, that the applicable statute of limitations would expire on April 5, 1984.
 
 
 7
 Nevertheless, the District Court granted the motion to reconsider and, after joining Walker on the Government's motion and concluding that the tax delinquency had been paid in full, granted summary judgment in favor of USLIFE on July 19, 1984. In doing so, the District Court acknowledged that the "date [for filing a refund claim] has now passed so any concern the government may have had regarding the possibility of refund claims is no longer at issue." (I-R. 136). The court ordered the return of monies being held in the registry of the court to USLIFE and noted that the only issue remaining for decision was USLIFE's claim for attorney's fees and costs pursuant to the Equal Access to Justice Act. After finding that USLIFE was a prevailing party and that the Government had failed to carry its burden of proving that its position was not substantially justified, the District Court awarded USLIFE $10,245.70 in fees. The Government appeals the fee award.
 
 DISCUSSION
 
 8
 Section 204(a) of the Equal Access to Justice Act ("EAJA"), Publ.L. No. 96-481, which became effective on October 1, 1981, amended 28 U.S.C. Sec. 2412 to provide for the award of attorney's fees and other expenses against the Government "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. Sec. 2412(d)(1)(A).[3] The Government bears the burden of proving that its position[4] was substantially justified. Knights of the Ku Klux Klan v. East Baton Rouge Parish School Board, 679 F.2d 64, 68 (5th Cir.1982); S & H Riggers & Erectors, Inc. v. OSHRC, 672 F.2d 426, 430 (5th Cir.1982); Ashburn v. U.S., 740 F.2d 843, 850 (11th Cir.1984).
 
 
 9
 The touchstone of substantial justification is reasonableness. The government carries its burden of proof if it shows that its position has a reasonable basis both in law and fact. Houston Agricultural Credit Corp., 736 F.2d 233 at 235 (5th Cir.1984); S & H Riggers & Erectors, supra, 672 F.2d at 430.
 
 
 10
 The standard, however, should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the government to establish that its decision to litigate was based on a substantial probability of prevailing.
 
 
 11
 H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, 1980 U.S.Code Cong. & Admin.News 4953, 4989-90. See Ashburn, supra, 740 F.2d at 848.
 
 
 12
 This Court has held that it will overturn an award of attorney's fees when it appears that the district court abused its discretion in making the award.
 
 
 13
 We agree with the D.C. Circuit which held in Spencer v. NLRB, 712 F.2d 539 (D.C.Cir.1983), that the "abuse of discretion standard" under the EAJA should be given the same special meaning accorded that term in the review of preliminary injunctions and other preliminary orders: "On one hand, it has been interpreted to require highly deferential review of district courts' tentative findings of fact; such determinations are not overturned unless 'clearly erroneous' and, in practice, are rarely subjected to critical examination." [citations omitted]. "On the other hand, it allows for close scrutiny of district courts' rulings on questions of law." [citations omitted].
 
 
 14
 Houston Agricultural Credit Corp., supra, 736 F.2d at 235. The question in this case is one of law: whether it was reasonable for the Government, in defending the suit brought by USLIFE, to rely on the principle that its right to retain the collected sums would not be conclusive until the limitations period for bringing a refund suit had expired with respect to those collections, and, in reliance on that principle, to continue collection efforts until the applicable statute of limitations expired.[5] It is to that question that we now turn.
 
 
 15
 The federal income taxes that employers must withhold from their employees' wages pursuant to Sections 3102 and 3402 of the Internal Revenue Code of 1954, 26 U.S.C. Secs. 3102, 3402, are deemed to be a "special fund in trust for the United States" under Section 7501 of the Internal Revenue Code of 1954. 26 U.S.C. Sec. 7501. An employee receives credit for such taxes withheld at the source, regardless of whether the employer remits the taxes to the Government. Slodov v. United States, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978). An employer who fails to pay over these withheld taxes is liable for the amount which should have been paid. When the trust fund taxes cannot be collected from the corporate employer, the Government must have recourse against the persons responsible for the nonpayment, or else the taxes will be lost forever to the Treasury. Dillard v. Patterson, 326 F.2d 302, 304 (5th Cir.1963).
 
 
 16
 To prevent this loss of revenue, 26 U.S.C. Sec. 6672 imposes liability on the person responsible for the default in the amount of the unpaid withholding taxes. Section 6672 provides that any person who is required to collect, account for, and pay over any taxes, and who willfully fails to do so, is personally liable for a penalty equal to the amount of the taxes not paid over to the Government. In order to be held liable under the section, a person must be deemed "responsible" within the meaning of the statute, and must "willfully" fail to remit the amounts due to the Government. Brown v. United States, 591 F.2d 1136, 1140 (5th Cir.1979).
 
 
 17
 A person whom the IRS determines to be responsible has two years from the date she pays the tax in which to file for a refund and thereby challenge her liability.[6] The burden is on the taxpayer to rebut the Commissioner's determination. Brown, supra; Mazo v. United States, 591 F.2d 1151, 1155 (5th Cir.1979), cert. denied sub. nom. Lattimore v. U.S., 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). Moreover, responsible persons under Section 6672 are held jointly and severally liable for the underlying withholding tax delinquency. Id. at 1157; Brown, supra, 591 F.2d at 1142. Therefore, the fact that more than one person is responsible for a particular delinquency does not relieve another responsible person of her personal liability, nor can a responsible person avoid collection against herself on the ground that the Government should first collect the tax from someone else. Hornsby v. United States, 588 F.2d 952, 954 (5th Cir.1979).
 
 
 18
 Although nothing in the language of Section 6672 explicitly prevents the Government from collecting and retaining from each responsible person a full satisfaction, this court has construed it to bring to the Government "only the same amount to which it was entitled by the way of tax." Newsome v. United States, 431 F.2d 742, 745 (5th Cir.1970). "Double recovery by the government is not necessary to fulfill Sec. 6672's primary purpose--protection of government revenues." Brown, supra, 591 F.2d at 1143. The Government acknowledges this fact and states that its policy is
 
 
 19
 to use assessments pursuant to Section 6672 solely as a collection device. Any excess amounts that are temporarily collected are refunded upon expiration of the statutory period for filing a refund claim.... Thus, the Government does not seek more than one full satisfaction of delinquent withholding taxes, but takes action to protect the revenue by assuring that one satisfaction of the withholding taxes ultimately will be retained.
 
 Appellant's Brief at 24-25.[7]
 
 20
 It should be noted that the problem involved here is not present when each responsible person has litigated her liability under Section 6672. When a person against whom an assessment has been made contests her liability by instituting a refund suit,[8] the Government joins the other persons against whom Section 6672 assessments have been made. See Rev.Proc. 69-26, 1969-2 Cum.Bull. 308; see also Crompton-Richmond Co. v. United States, 311 F.Supp. 1184, 1185 (S.D.N.Y.1970). This procedure resolves doubts as to whom the Government may look to for payment of the withholding tax delinquency.
 
 
 21
 By contrast, where one or more of the allegedly responsible persons chooses not to contest her liability within a short time after the assessments are made, protection of the revenue becomes a more complicated matter. Until the limitations period for seeking a refund expires, it cannot be determined with certainty whether the Government will be entitled to retain the funds it has collected. The six-year period for collecting the liabilities assessed against the remaining responsible persons, see 26 U.S.C. Sec. 6502(a), could expire while the first responsible person's refund claim is still pending. In such circumstances, if the Government were prohibited from pursuing collection activities against the other responsible persons, a successful claim for refund by one of the responsible persons would have the effect of defeating collection of the full amount of the underlying taxes. In this case, a premature cessation of collection efforts against Harbison would have forced the Government to rely on payments made by Walker to satisfy the delinquency, despite the possibility--albeit in hindsight nonexistent--that it might later be called upon to refund Walker's payments.
 
 
 22
 The Government's position also finds ample support in Gens v. United States, 615 F.2d 1335 (Ct.Cl.1980). In that case, the taxpayer, a person against whom an assessment had been made pursuant to Section 6672, contended that the Government was required to abate the assessment against him to the extent that it had already collected assessments arising from the same withholding tax liabilities from two other responsible persons. Although the Government had in fact collected some funds, one of the business associates had filed a suit for refund which was still pending, while the other associate had entered into a settlement of his liability with the Government. The court held that since the Government did not have an established right to retain the funds it had collected, the taxpayer was not entitled to an abatement at that time. In reaching its conclusion, the court reasoned:
 
 
 23
 Successful collection by the Government of an assessment arising from the payroll tax liability is achieved only when the Government's right to retain an administratively made collection of the assessment is established. It has been held that the right is established "only upon expiration of the statutory period for commencement of a refund suit or, if a refund suit is filed, upon final adjudication of the action." [quoting Crompton-Richmond Co. v. United States, supra, 311 F.Supp. at 1185] Only when the Government's right to retain an administrative collection is established does it become incumbent on the Government to abate, in the amount of the collection, all 100-percent penalty assessments arising from the payroll tax liability.
 
 
 24
 Id. at 1340. See also, Crompton-Richmond Co., supra, 311 F.Supp. at 1186 (assessment does not become excessive until the tax is "finally and irrevocably paid").
 
 CONCLUSION
 
 25
 The District Court interpreted the Internal Revenue Service's policy of collecting the amount of the unpaid withholding taxes only once to require the Government to cease collection efforts after obtaining payments totaling the amount of the underlying delinquency, regardless of the time remaining in the limitations period. This analysis, however, undermines significantly the Internal Revenue Service's statutory duty to ensure the full collection of all outstanding taxes. The analysis also ignores the fact that a responsible person who has not litigated her liability under Section 6672 may seek a refund of amounts she has paid in satisfaction of an assessment against her. In such circumstances, prohibiting the Government from pursuing each person against whom an assessment has been made subjects it to the risk that the first person to pay the amount of the underlying delinquency might obtain a refund after the limitations period has expired for collecting taxes from the other persons who were responsible for seeing that the withholding taxes were paid.
 
 
 26
 In this case, the Government's decision to continue to collect from both Harbison and Walker and to defend this suit as part of that effort was clearly reasonable in both law and fact. To uphold the award of fees in this case would penalize the IRS for doing nothing more than carrying out its statutory mandate. As such, the Government's position was more than substantially justified under the Equal Access to Justice Act, and the award of fees must fall.
 
 
 27
 REVERSED.
 
 
 
 [1]
 Section 6672(a) provides, in pertinent part:
 Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.
 
 
 [2]
 The remaining issues raised by USLIFE concerning its right to recover from the Harbisons and its attorney's fees were not resolved
 
 
 [3]
 Effective for cases commenced on or after March 1, 1983, the EAJA has been superseded with respect to the award of attorney's fees in tax cases. Section 292(a) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97-248, 96 Stat. 324, added Section 7430 to the Internal Revenue Code of 1954 (26 U.S.C.), which renders the EAJA inapplicable to tax cases. Under that provision, attorney's fees may be awarded against the United States where its litigating position was "unreasonable." Although Code Section 7430 does not contain eligibility standards or an hourly rate cap (as was the case with the EAJA), awards are subject to an overall limit of $25,000 and the taxpayer bears the burden of showing that he has prevailed in the litigation and that the Government's position was unreasonable. H.R.Conf.Rep. No. 760, 97th Cong., 2d Sess. 686-687 (1982-2 Cum.Bull. 600, 700-701); see also id., at 265-67. In addition, Section 204(c) of the EAJA, the "sunset" provision of the Act, provides for the repeal of Section 2412(d) of 28 U.S.C., effective October 1, 1984, except that "the provisions ... shall continue to apply through final disposition of any action commenced before the date of repeal."
 
 
 [4]
 There was a significant split among the circuits as to whether the term "position" refers only to the Government's litigating position, see, e.g., Spencer v. NLRB, 712 F.2d 539, 557 (D.C.Cir.1983), cert. denied, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457; Tyler Business Services, Inc. v. NLRB, 695 F.2d 73, 76 (4th Cir.1982), or the Government's overall position, including the underlying agency position, see e.g., Rawlings v. Heckler, 725 F.2d 1192, 1195-1196 (9th Cir.1984); NRDC v. EPA, 703 F.2d 700, 707 (3rd Cir.1983)
 Congress settled the question recently in amendments to the EAJA, declaring that "position" means, in addition to the agency's litigating position, "the action or failure to act by the agency upon which the civil action is based." Pub.L. No. 99-80, Sec. 2(c)(2)(B), 99 Stat. 185 (to be codified at 28 U.S.C. Sec. 2412(d)(2)(D)). The responsible House Committee expressly rejected "the holding ... that the only government 'position' to be scrutinized in the context of an EAJA case is that taken in the litigation itself." H.Rep. No. 120, 99th Cong., 1st Sess. 12 (1985), reprinted in 1985 U.S.C.Code Cong. & Ad.News 132, 140. See also, Cervantez v. Whitfield, 776 F.2d 556, 564 (5th Cir.1985). We note that the Government's position at the agency level was the same as its position in the court below.
 
 
 [5]
 The only factual question here is whether the Government was in fact guided by the applicable statute of limitations. That the government was so guided is made clear by its undisputed representation that the statute of limitations with respect to Walker's right to claim a refund expired April 5, 1984, well after its decision to defend the suit
 
 
 [6]
 As relevant here, 26 U.S.C. Sec. 6511(a) provides that a claim for refund can be filed within three years of the date the return is filed (and the taxes paid) or two years from the date the taxes were paid, whichever is later. Since no returns are filed in the case of Section 6672 liabilities, only the two-year rule has significance here. Moreover, a Section 6672 liability is a divisible liability. See Steele v. United States, 280 F.2d 89 (9th Cir.1960). Accordingly, a responsible person need only pay the tax attributable to one employee for one quarter in order to maintain a claim for refund. She is not required to pay all of the sums assessed against her before filing a claim for refund
 
 
 [7]
 In this regard, the Internal Revenue Service has stated in its Policies of the IRS Handbook, P-5-60 (Approved 5-30-84), reprinted in 1 Administration, CCH Internal Revenue Manual 1305-15:
 The withheld income and employment taxes or collected excise taxes will be collected only once, whether from the corporation, from one or more of its responsible persons, or from the corporation and one or more of its responsible persons. Collection of the withheld income and employment taxes or collected excise taxes is achieved when the Service's right to retain the amount collected is established. An abatement of the tax assessment against the corporation will be made to the extent that the related 100-percent penalty assessment is paid, after expiration of the period for filing a claim by the person(s) from whom the 100-percent penalty was collected.
 See generally 2 Administration, CCH Internal Revenue Manual, para. 5548.3-5548.4, at 7317-3-7318.
 
 
 [8]
 In awarding attorney's fees to USLIFE, the District Court stated that "the Government's policy of actively pursuing collection of a total tax delinquency from every responsible person, which in turn results in the filing of refund suits to collect overpayments, exemplifies the unnecessary litigation which Section 2412 was intended to discourage." (I-R. 55). Because the Internal Revenue Service has established procedures for refund of such overpayments at the administrative level, a claim can be resolved without the necessity of suing for a refund. See 2 Administration, CCH Internal Revenue Manual, para. 5548.3