**George G. GRIFFON, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 85–4733.

United States Court of Appeals, Fifth Circuit.

Oct. 27, 1987.

Barry M. Sax, Falls Church, Va., for petitioner.

John C. Hoyle, Civil Div., Anthony J. Steinmeyer, U.S. Dept. of Justice, Ronald T. Osborne, Admin. Law Judge, Dept. of H.H.S., Departmental Grant Appeals Bd., Civil Money Penalties Hearing Office, John Meyer, Office of Gen. Counsel, Inspector Gen. Div., Dept. of H.H.S., Washington, D.C., for respondent.

On Petitioner's Application for Attorneys' Fees

Before CLARK, Chief Judge, GOLDBERG and GARWOOD, Circuit Judges.

BY THE COURT:

IT IS ORDERED that petitioner's Application for Attorneys' Fees and Expenses Under the Equal Access to Justice Act, 28 U.S.C. § 2412, is DENIED.

Petitioner, having prevailed for the reasons set out in our opinion on the merits herein, *Griffon v. United States Department of Health*, 802 F.2d 146 (5th Cir. 1986), seeks attorneys' fees under the Equal Access to Justice Act (EATJA), 28 U.S.C. § 2412, and is entitled to recover them "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust," 28 U.S.C. § 2412(d)(1)(A). The position of the United States for this purpose includes its underlying action as well as its litigation position. § 2412(d)(2)(D). The United States has the burden to demonstrate that its position was substantially justified, and we have said that "[t]he touchstone of substantial justification is reasonableness," and that government meets its burden "if it shows that its position has a reasonable basis both in law and fact." *U.S. Life Title Insurance Company of Dallas v. Harbison*, 784 F.2d 1238, 1242 (5th Cir.1986). Here, however, reasonableness in fact is not in issue, as the only question presented was purely one of law, namely, whether the regulations of the Secretary of Health and Human Services retroactively applying the procedural aspects of the Civil Monetary Penalties Law (CMPL), 42 U.S.C. § 1320a–7a, were consistent with that statute. While we held they were not, that does not end the matter, for as we have recognized:

" 'The standard, however, should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the government to establish that its decision to litigate was based on a substantial probability of prevailing.' H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, 1980 U.S.Code Cong. & Admin.News 4953, 4989–90." *U.S. Life Title Insurance Company*, 784 F.2d at 1242.

Although our quoted language was directed to the litigation position of the government, in the circumstances of this case there is no reason not to similarly apply it also to the adoption of the regulations themselves.

Our decision on the merits invalidating the regulations in a sense determined that they amounted to an unreasonable interpretation of the statute, as "[a] court of appeals can only invalidate an administrator's interpretation if that interpretation is unreasonable," *Griffon*, 802 F.2d at 148. Nevertheless, we do not regard this as conclusive on the substantial justification question, else in this class of case the substantial justification issue would always simply merge with the decision on the merits. That, however, would be contrary to the above-quoted language of *U.S. Life Title Insurance Company*. As is pointed out in *Federal Election Commission v. Rose*, 806 F.2d 1081, 1087 (D.C.Cir.1986), the EATJA "substantially justified" question is governed by a standard "that is separate and distinct from whatever legal standards governed the merits phase of the case." Merely because the government's underlying action was held legally invalid as being "arbitrary and capricious" does not necessarily mean that the government acted without substantial justification for purposes of the EATJA, despite "the apparent anomaly in this result." *Id.* We also observe that the same sort of distinction, though in a different context, was made by Justice Scalia in *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 3041, 97 L.Ed.2d 523 (1987), where he recognized that the fact that a warrantless search was substantively invalid because unreasonable did not necessarily mean that the officer making it acted unreasonably for purposes of qualified immunity, even though this could be characterized as saying that the officer was " 'reasonably unreasonable.' "

Exercising our judgment in this matter, *cf. Rose* at 1089, we conclude that the government's position was "substantially justified" within the meaning of the EATJA. The case was one of first impression, not only with respect to the CMPL

but also as to the more general question of administrative action retroactively applying the procedural aspects of a statute which, though predominately procedural, is nevertheless partially substantive. As we noted:

> "This case wages a conflict of first impression, which simultaneously sounds two canons: first, that in the absence of congressional intent, substantive legislation is to be given prospective application, and; second, that procedural legislation is to be given retroactive application. When a statute of mixed procedural and substantive character appears in the midst of the fray, no single rule reveals the faction to which it belongs." *Griffon*, 802 F.2d at 147.[1]

We noted that the legislative history was not helpful one way or the other (*id.* at 150–51; "deafening congressional silence"), but, as the above set-out quotation indicates, we nevertheless recognized that regulations giving retroactive application to a procedural statute were proper even without affirmative support in the legislative history. *Id.* at 150–51. We further noted that "Congress generally intended the CMPL to be a procedural, civil alternative to ameliorate the pattern of underenforcement of criminal statutes," and that "it is not wholly unreasonable to adopt the Secretary's interpretation that the CMPL was also intended to provide a procedural alternative to the FCA [False Claims Act]. Most of the CMPL provisions are procedural." *Id.* at 151. However, we went on to point out that the CMPL made one change expanding substantive liability, and we stated that therefore the question before us was "[w]hether this change so colors the nature of the Act as to make the CMPL substantive law for retroactivity purposes." *Id.* While we answered affirmatively, we also observed in this respect that "[l]ittle guidance exists on whether the statute as a whole can be characterized as

procedural." *Id.* We also had to deal with the likewise essentially *res nova* question of whether retroactive application of the procedural aspects only of a mixed statute, and not its substantive aspects, was permissible, as it most likely would have been had the statute been entirely procedural with the substantive changes being made by separate enactment. We concluded that this was not permissible, despite "the lack of unfairness to petitioner." *Id.* at 155.

While we have no doubt as to the correctness of our conclusion on the merits, the foregoing nevertheless demonstrates that petitioner correctly characterizes the questions presented as "both novel and difficult" (*see* note 1, *supra*). We conclude that the government's position, though ultimately erroneous, was nevertheless "substantially justified." We are also mindful in this regard that the "special circumstances" provision of section 2412(d)(1)(A) was in part designed to " 'insure that the Government is not deterred from advancing in good faith ... novel but credible ... interpretations of the law that often underlie vigorous enforcement efforts.' " *Russell v. National Mediation Board*, 775 F.2d 1284, 1290 (5th Cir.1985). We think the same considerations may legitimately influence to some extent our determination of whether the government is "substantially justified" in respect to a *res nova* legal position, at least where, as here, we conceive a contrary result to be unjust. Here there is no question of good faith, and as we pointed out, the CMPL was intended to "ameliorate the pattern of underenforcement," and the regulations were in furtherance of this intent and were crafted *not* to trample on substantive rights. Of course, *"res nova"* is not a safe harbor for stupidity, callousness, or bad faith. *Russell*. But here the situation is wholly different from *Russell*, where we noted that the merits determination had characterized a key government contention as " 'playing games

---

1. Petitioner himself recognizes that the question was novel and difficult, stating in his memorandum supporting his EATJA application:

   "There should be no question that the questions raised were both novel and difficult. This case was one of the first involving an appeal of a CMPL adjudication. It is the first

such case decided, so there was no direct case precedent. The legislative history was brief and not at all comprehensive. Counsel had to research related areas of law and construct their cases with imagination, creativity and a great deal of dedication."

with the plaintiffs and with this court,'" and another government argument as "'a perversion of the truth,'" and had held that the government "breached its clear statutory mandate." *Russell* at 1290.

We conclude that the government's position was substantially justified within the meaning of the EATJA so that petitioner is not entitled to attorneys' fees thereunder.

GOLDBERG, Circuit Judge, specially concurring:

I concur specially only to underline my agreement with two points made in the majority's fine opinion: first, that under The Equal Access to Justice Act (the "EAJA"), 28 U.S.C. § 2412, an award of attorneys' fees is appropriate when *either* the government's litigating position, *or* the underlying governmental action which spawned the litigation is "unreasonable"; and second, that a determination that a regulation is "unreasonable," or "arbitrary and capricious," for the purposes of invalidation, does not in and of itself determine whether the underlying government action was "unreasonable" for the purposes of a fee award under the EAJA.

Though the EAJA does not mandate a fee award every time the government loses a lawsuit, *USLIFE Title Ins. Co. of Dallas v. Harbison*, 784 F.2d 1238, 1242 (5th Cir. 1986), in most cases where a regulation is invalidated, the narrow scope of appellate review of agency action, and the deference accorded to agency interpretations will mean that invalidation will result in an award of attorneys' fees. In a small group of particularly close cases, however, the two uses of the word "reasonable" may diverge. This is just such a case. Here, we hold an agency action to be unreasonable and therefore invalid, while at the same time holding that same action to be reasonable for the purposes of a fee award. I concur to further explain why this result is not anomalous.

## I. *Position of the Government*

The EAJA provides for an award of attorneys' fees to the prevailing party in suits against the United States, its agencies and officials, except when the position taken by the government is "substantially justified" or when special circumstances would render such an award unjust. 28 U.S.C. 2412(d)(1)(A). Originally the statute did not define the term "position of the government," and two lines of cases developed. One focused on the *underlying action* of the government, while the other focused on the government's *litigation position. Spencer v. N.L.R.B.*, 712 F.2d 539, 546 (D.C.Cir.1983). The courts adopting the "litigation position" approach did so at least in part to prevent EAJA from becoming an automatic fee shifting provision where agency action was involved. *Id.* at 552.

To deal with the confusion engendered by this split in circuits, Congress amended the statute in 1985 to provide that "Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action." 28 U.S.C. 2412(d)(1)(B). Instead of choosing between the approaches, Congress adopted both.

Congress obviously intended to increase the number of cases where courts would award fees, but the statute and the legislative history leave it unclear how far Congress wanted to go. *Russell v. National Mediation Bd.*, 775 F.2d 1284, 1289 (5th Cir.1985). This court has held though, that prior to amendment the term "substantial justification" referred only to the government's litigation position, and that after the amendment, if the underlying agency action was not "substantially justified" as well, fees were to be awarded. *Id.* As a result, where the underlying agency action was characterized as "playing games with the plaintiffs," fees were awarded even though this court had previously held that the government's litigation position was substantially justified. *Id.*

## II. *Resolving the Anomaly*

The congressional mandate to award fees whenever the underlying agency action is

unreasonable, as required by the 1985 amendments, forces us to wrestle with the problem that the courts adopting the "litigation position" approach sought to avoid. Examining the underlying action as well as the litigation position creates an apparent anomaly. Courts must grant deference to agency interpretations of statutes. *Chevron, U.S.A., Inc. v. N.R.D.C.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). It is therefore difficult to imagine a situation where it would be appropriate to reverse an agency interpretation while denying attorneys' fees. This apparent anomaly was ably explained away by the D.C.Circuit in *Federal Election Commission v. Rose*, 806 F.2d 1081, 1088 (D.C.Cir. 1986). That court noted that "arbitrary and capricious" is a term of art. Agency action may be deemed arbitrary and capricious for a number of reasons which are "logically unrelated to whether the underlying agency action is justified under the organic statute." *Id.* For example, a statute may be held to be arbitrary and capricious either because it is accompanied by inadequate explanation or because the agency made the decision without considering a relevant factor. *Id.* Neither of these issues goes to the kind of reasonableness which determines whether litigation should be encouraged under the policies of the EAJA. The majority is absolutely correct when it says that finding the underlying governmental action reasonable for EAJA purposes has no bearing whatsoever upon the holding that even applying deferential standards for review of agency action, the regulation was invalid.

In determining whether an underlying governmental action is substantially justified, one must look to the policies which the EAJA seeks to further. The preamble to the act states that the purpose of the EAJA is to encourage the objects of agency action to pursue litigation without *undue* fear of staggering legal expenses. Pub.L. No. 96–481 § 202, 94 Stat. 2321, 2325 (1980). But the legislative history is also clear that award of attorneys' fees is not to be automatic whenever the government loses. H.R.Rep. No. 1418, 96th Cong., 2nd Sess. 11, 1980 U.S.Code Cong. &

Admin.News 4953, 4990. The legislative history of the 1985 amendments provides words, but not guidance as to whether Congress intended to alter that understanding. *Russell*, 775 F.2d at 1289. In defining the term reasonableness under the EAJA, a court must, therefore, balance the goal of encouraging litigation against the chilling effect of encouraging an excessive number of challenges to agency action. *See US-LIFE*, 784 F.2d at 1245.

Whether to award attorneys' fees in this case is a close question. Determining the validity of the regulation involved difficult issues of statutory interpretation. Furthermore, appellant had sufficient incentive to challenge the action without a governmental subsidy. I view the class of cases where the action is meritorious but not worthy of subsidy as exceedingly small, but I do not read the majority as undertaking to state a rule for all times, all places and all cases. I think that the majority has come up with the correct answer for the specific facts of this case.