Louise MINTER, Plaintiff,

v.

SECRETARY, DEPARTMENT OF
HEALTH AND HUMAN
SERVICES, Defendant.

Civ. A. No. CA3–83–0439–D.

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 15, 1987.

Carl M. Weisbrod of Weisbrod & Weis-brod, Dallas, for plaintiff.

Charles Cabaniss, Asst. U.S. Atty., Dallas, for defendant.

## MEMORANDUM OPINION
## AND ORDER

FITZWATER, District Judge.

The principal question presented by plaintiff's motion for award of attorney's fees under the Equal Access to Justice Act ("EAJA") is whether the Secretary of Health and Human Services was substantially justified in denying disability benefits to plaintiff. Plaintiff also contends her attorney is entitled to be compensated at a rate in excess of the EAJA's $75 per hour cap. Because the court finds that the Secretary was not substantially justified, and because the question whether plaintiff's counsel should be compensated at an excess rate presents an issue which the Fifth Circuit will soon decide for the first time, the court grants Minter's motion for attorney's fees, orders an award of interim fees at the rate of $75 per hour, but abates its determination of the final fee award.

## I.

### BACKGROUND

On October 26, 1981, plaintiff, Louise Minter ("Minter"), applied for social security disability benefits. The Secretary determined that Minter was not disabled within the meaning of the Social Security Act and so denied her claim. Minter appealed to an administrative law judge who considered her claim *de novo*. The ALJ also found that Minter was not disabled. Minter next requested, but was denied, review by the Social Security Appeals Council. Subsequently, Minter filed suit in this court claiming that the Secretary had wrongly denied disability benefits. The court (Hill, J.) held that the agency record was insufficient to determine Minter's claim and remanded the case to the Secretary to make a specific finding as to Minter's claimed respiratory impairment. Judge Hill ruled that, on remand, the Secretary should make specific findings regarding the effect on Minter's capacity to engage in gainful activity caused by the interaction of two drugs Minter used (prednisone and insulin) and by her use of a breathing machine. On remand, Minter's case was assigned to a different ALJ who considered not only the remanded question but all of Minter's claims. On April 29, 1985, the second ALJ held that Minter had been disabled since April 15, 1980. Based on this finding, the Secretary has paid Minter social security disability benefits. Minter now files this motion under the EAJA to recover attorney's fees incurred by her counsel in prosecuting this case at the U.S. district court level.

## II.

### ANALYSIS

#### A.

The EAJA provides that "a court shall award to a prevailing party" the fees the party incurred in any civil action brought by or against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Because the Secretary completely reversed his stance on awarding Minter benefits, the government does not contest that Minter is a "prevailing party" under the Act. Moreover, neither party contends that the "special circumstances" language applies to this case. The only issue the court must decide is whether the Secretary was "substantially justified" in refusing disability benefits.

■ Under the EAJA, the government bears the burden of proving that the Secretary was substantially justified originally in denying Minter's disability claim, *U.S. Life Title Insurance Co. of Dallas v. Harbison*, 784 F.2d 1238, 1241 (5th Cir.1986), and of showing that his position at every stage of the proceedings was substantially justified. *Herron v. Bowen*, 788 F.2d 1127, 1130 (5th Cir.1986). The substantial justification test essentially asks whether the government's actions were reasonable. *Knights of the KKK v. East Baton Rouge*, 679 F.2d 64, 68 (5th Cir.1982). "The touchstone of substantial justification is reasonableness." *Harbison*, 784 F.2d at 1242. The reasonableness test "is a middle ground between an automatic award to a prevailing party and a restrictive standard which would have required the prevailing party to show the government position to be frivolous and groundless." *Bazaldua v. United States Immigration and Naturalization Service*, 776 F.2d 1266, 1269 (5th Cir.1985). The government must show that, in denying Minter's disability benefits, its decision was both legally and factually reasonable. *Broussard v. Bowen*, 828 F.2d 310, 312 (5th Cir.1987).

Minter contends the Secretary was both legally and factually unreasonable. She contends that the Secretary failed to review carefully the medical evidence, failed to consider the side effects of the medication she took, failed to consider the effect of her daily use of a breathing machine, failed to consider the frequent exacerbations of her conditions, and wrongly concluded that Minter was not disabled.

A disabled person has a right to receive social security disability benefits. 42 U.S.

C. § 423(a)(1)(D). Disability for this purpose is defined as the "inability to engage in any substantially gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1). A claimant will be considered "disabled" only if her physical and/or mental impairments are so severe that the claimant can neither do her previous work nor engage in other substantial gainful work. *Id.* § 423(d)(2)(A).

The Secretary, in determining whether a claimant is disabled under 42 U.S.C. § 423(d), uses a sequential process. *Herron*, 788 F.2d at 1131. If a claimant is not determined to be either disabled or not disabled by a test, the Secretary proceeds to the next test. 20 C.F.R. § 404.1520(a); *Jason v. Heckler*, 767 F.2d 82, 84 (5th Cir.1985). The Secretary initially determines whether the claimant is engaged in work that constitutes "substantial gainful activity." 20 C.F.R. § 404.1520(b). If the claimant is so engaged, she is not disabled; if she is not so engaged, the Secretary next determines whether the impairment is severe. *Id.* at § 404.1520(c). If the impairment is not severe, the claimant is not disabled. If the impairment is severe, the Secretary then compares the impairment with a list of impairments compiled by the Secretary, *see id.* at Part 404, Subpt. P., App. 1, and if the impairment of the claimant meets or equals a listed impairment, the claimant is considered automatically disabled. *Id.* at § 404.1520(d). If the claimant's impairment does not meet or equal the listed impairments, the Secretary next determines whether claimant's impairment prevents her performing her prior employment. *Id.* at § 404.1520(e). If the claimant is unable to continue her prior employment, the Secretary next inquires whether she can do any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). If

she cannot, the claimant is disabled within the meaning of the Act.

The first ALJ went through the sequential process without determining until the last test whether Minter was disabled. The first ALJ held that Minter was not disabled because she could perform other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The second ALJ determined that Minter was disabled much earlier in the process by holding that Minter's impairments as a whole equal the Secretary's listed impairments in 20 C.F.R. Part 404, Subpt. P., App. 1; *id.* at § 404.1520.

■ That the Secretary on remand reversed his original finding of lack of disability does not inexorably mean the government's position was not substantially justified in the original proceeding. *Houston Agricultural Credit Corp. v. United States*, 736 F.2d 233, 236 (5th Cir. 1986); *Griffon v. U.S. Department of Health and Human Services*, 832 F.2d 51, 52 (5th Cir.1987). The government's loss on the merits of the case "gives rise to no presumption that the government's position was not substantially justified." *Broussard*, 828 F.2d at 312. Nevertheless, the Secretary's complete about-face on Minter's claim when required by the court to make specific factual findings is persuasive evidence that the government's position was not substantially justified.

The court's review of Minter's medical record and the hearing before the first ALJ indicates that the first ALJ was presented with evidence that would have warranted the finding that Minter could not engage in any "substantially gainful activity" and therefore was "disabled" within the meaning of the statute and regulations.[1] The records of the various doctors Minter saw indicate that she had multiple physical impairments. The records show she suffered from a rare and little understood disease, sarcoidosis, which caused multiple subcutaneous nodules over 20% of her skin. The

---

1. The court's hindsight review for EAJA "substantial justification purposes," after having the benefit of a second ALJ's opinion, is not necessarily the same as the court's substantial evidence review conducted on the merits of a claim. *See Griffon v. U.S. Department of Health and Human Services,* 832 F.2d 51, 52 (5th Cir. 1987).

sarcoidosis had spread to her internal organs; the nodules existed in her lungs causing shortness of breath; the sarcoidosis also caused a continuous low-grade fever. Minter developed gallbladder problems and her gallbladder had to be removed. During this surgery a liver biopsy discovered that between 30 and 50 percent of Minter's liver had been replaced by the grandulomatus nodules of sarcoidosis. Her doctors agreed that if she performed moderately strenuous activity, this disease would probably make her tired and short of breath. In order to control the sarcoidosis, Minter took the steroid prednisone.

Minter is also a diabetic who regularly takes insulin. The use of prednisone to control the sarcoidosis caused the diabetes to go out of control. While there was no evidence that the diabetes caused severe end-organ damage, the doctors' records stated that her aggravated diabetes could also cause Minter to fatigue easily. Minter took valium and talwin for an upset stomach, cramps, and headaches. The use of prednisone caused Minter to retain fluids, increasing her weight 10 to 15 pounds.

Minter's testimony before the first ALJ strongly indicated that she could not engage in substantially gainful activity and thus was disabled. She testified that she had severe fatigue problems, could only walk about 500 feet without having to stop and rest, and that, despite sleeping 10 to 12 hours at night, she was still sleepy during the day. She also testified that she avoided driving because she had in the past fallen asleep while driving. Minter testified that, while she could take care of her basic personal needs, she was unable to do most household chores and her children prepared her meals. Due to her chronic fatigue, she testified that going to the doctor was a "big day" for her. Minter further testified that she had frequent cramps, could only sit in a chair for about 20 minutes before her legs and arms cramped or went to sleep, and that sarcoidosis nodules, each about "the size of a marble," had spread over her entire body. She testified that the prednisone often

caused her eyes to swell, that on "a bad night" her eyes would swell up and close and she could not see in the morning, and the swelling gave her severe headaches. She testified that, due to her diabetes, she was required to take insulin and check her urine daily; that because the prednisone had caused her diabetes to go out of control, she was to see the physician every week to check her blood sugar and insulin levels, and that due to the sarcoidosis nodules in her lungs, she often had trouble breathing and was required to use a respirator three to four times daily for shortness of breath.

The first ALJ clearly discounted, in large measure, Minter's testimony at the hearing. As he stated in his report, "It is obvious that the claimant greatly exaggerated her complaints of fatigue at the hearing." Generally, the court gives great deference to an ALJ's factual findings, especially on the issue of credibility. *National Labor Relations Board v. Riley–Beaird, Inc.*, 681 F.2d 1083, 1087 (5th Cir.1982).[2] Here, however, where the record shows Minter's impairments were clearly laid out both by her testimony and by her doctor's records, and where a second ALJ completely reversed the first ALJ's findings, it appears that the first ALJ's findings were not reasonable.

■ The government, not Minter, bears the burden of proving it acted reasonably. *Harbison*, 784 F.2d at 1241. In its responsive brief, the government devotes just over a page and a half arguing specific facts that it claims demonstrate the first ALJ's findings were reasonable. The government points to different entries in Minter's medical records that the government claims show that Minter's condition was not serious. These entries do show certain short-term improvements in Minter's condition. The second ALJ found, however, that these fleeting improvements in Minter's impairments resulted because "Sarcoidosis is a disease that waxes and wanes in spite of anything the medical profession can do." Because the second ALJ

2. *See* note 1, *supra.*

sharply disagreed with the first ALJ's findings, because the record before the first ALJ was such that a remand was required, and because the evidence presented to the first ALJ strongly indicated that Minter could not engage in substantially gainful activity and was therefore "disabled," the government's reliance on a record of sporadic and fleeting improvements in Minter's condition does not satisfy the government's burden of showing that it was substantially justified in denying Minter's request for disability benefits.

The court holds that the government has not shown that it was substantially justified in denying Minter her disability benefits. Therefore, Minter should recover her attorney's fees under the EAJA.

### B.

In Minter's motion for attorney's fees, she contends her attorney should be compensated at a rate in excess of the $75 per hour EAJA cap on the basis of an increase in the cost of living. Judges of this court,[3] as well as the Sixth Circuit, have adhered to the $75 per hour cap. *See, e.g., Chipman v. Secretary of Health and Human Services,* 781 F.2d 545, 547 (6th Cir.1986); and *McKinney v. Secretary of Department of Health and Human Services,* (CA3–84–2267–D) (N.D.Tex. Aug. 19, 1987), *appeal docketed* [Available on WESTLAW, 1987 WL 43097]. Other courts have permitted awards in excess of the $75 per hour limit on the basis of increases in the cost of living that have transpired since the EAJA's enactment. *See Trichilo v. Secretary of Health and Human Services,* 823 F.2d 702, 705 (2d Cir.1987); *Sierra Club v. Secretary of the Army,* 820 F.2d 513, 521 (1st Cir.1987); *Allen v. Bowen,* 821 F.2d 963, 967 (3d Cir.1987); and *Hirschey v. F.E.R.C.,* 777 F.2d 1, 5 (D.C.Cir.1985). While the Fifth Circuit has yet to decide the question, the court heard oral argument on November 2, 1987 in consolidated cases which present the issue. *E.g., Shugart v. Bowen, appeal docketed,* No. 87–1133.

The court concludes that, in the interest of justice, it should await deciding the rate at which Minter's counsel should be compensated pending issuance of the Fifth Circuit's opinion. The reasonableness of the number of hours expended by counsel, however, is not disputed. Accordingly, the Secretary is ordered to pay Minter's counsel the sum of $5,718.75 (76.25 hours × $75) as an interim fee award. By paying said award and accepting the fee payment, neither party waives its respective arguments concerning whether an EAJA award may exceed the rate of $75 per hour.

SO ORDERED.

---

**3.** *But see Hubbs v. Bowen,* CA3–85–0602–H (N.D.Tex. Aug. 20, 1987) (Sanders, J.) [Available on WESTLAW, 1987 WL 43607] (awarding counsel $92.25 per hour on basis that congressional intent permits cost of living increases).