T.C. Memo. 2017-242

UNITED STATES TAX COURT

SHEILA WOODLEY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20343-15L.                    Filed December 6, 2017.

Renee D. Dowling, for petitioner.

Scott A. Hovey, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, Judge: In this collection due process (CDP) case, petitioner

seeks review pursuant to sections 6320(c) and 6330(d)(1)[1] of the determination by

the Internal Revenue Service (IRS or respondent) to uphold a notice of intent to

_____

[1]All statutory references are to the Internal Revenue Code (Code) in effect at
all relevant times. We round all monetary amounts to the nearest dollar.

[*2] levy and a notice of Federal tax lien (NFTL) filing. The IRS initiated the collection action with respect to trust fund recovery penalties (TFRPs) that it had assessed against petitioner for unpaid employment taxes of LAJE, Inc. (LAJE). The issues for decision are: (1) whether petitioner can challenge in this CDP case her underlying liability for the TFRPs; (2) whether the SO abused her discretion in sustaining the proposed collection action; and (3) whether the IRS' receipt of payments from other parties toward LAJE's tax liabilities prevents it from collecting TFRPs from petitioner. We resolve all three issues in respondent's favor.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated by this reference. Petitioner resided in the U.S. Virgin Islands (USVI) when she filed her petition.

Petitioner was an officer, employee, and part owner of LAJE, a USVI corporation that operated a sandwich shop in the USVI. During 2007 LAJE became delinquent in its employment tax obligations. On August 3, 2009, the IRS assessed employment taxes against LAJE for seven consecutive calendar quarters, the first ending June 30, 2007, and the last ending December 31, 2008.[2]

---

[2]In her petition petitioner seeks relief with respect to "2007 and 2008." However, the calendar quarter ending March 31, 2007, was not the subject of any
(continued...)

**[\*3]**   On March 16, 2012, the IRS sent petitioner via certified mail a Letter 1153, Trust Fund Recovery Penalty Letter.  This letter informed petitioner of the IRS' determination that she was a person "required to collect, account for, and pay over" LAJE's employment taxes and that the IRS proposed to assess TFRPs against her for the calendar quarters referenced above.  The letter informed her: "You also have the right to appeal or protest this action.  To preserve your appeal rights you need to mail us your written appeal within 60 days from the date of this letter (75 days if this letter is addressed to you outside the United States)."  The letter included detailed instructions about how to file an appeal with the IRS Appeals Office.

On April 2, 2012, petitioner signed a U.S. Postal Service Form 3811, Certified Mail Receipt, acknowledging delivery and receipt of the Letter 1153.  She did not file an appeal with the IRS Appeals Office or take any other action in response to the Letter 1153.  Accordingly, on July 9, 2012, the IRS assessed TFRPs against her for the seven quarters in question, having determined that she was a "responsible person" required to "collect, truthfully account for, and pay over" LAJE's

---

[2](...continued)
proposed collection action in this case and is not before the Court.

[*4] employment taxes.  See sec. 6672(a).  The aggregate amount of the TFRPs

exceeds $25,000 for the quarters in question.

On March 11, 2015, in an effort to collect these unpaid TFRPs, the IRS sent

petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing.

On March 24, 2015, the IRS sent petitioner, for the same TFRPs, a Notice of Fed-

eral Tax Lien Filing and Your Right to a Hearing.  She timely requested a CDP

hearing as to both notices.

After receiving petitioner's case, a settlement officer (SO) from the IRS Ap-

peals Office in Jacksonville, Florida, reviewed petitioner's administrative file and

confirmed that the TFRPs in question had been properly assessed and that all other

requirements of applicable law and administrative procedure had been met.  On

May 6, 2015, the SO held a telephone CDP hearing with petitioner.  During the

hearing petitioner contended that she had no liability for the TFRPs because a

third party had purchased LAJE and was making payments to satisfy its delinquent

employment taxes.  The SO explained that a third party's undertaking to discharge

LAJE's tax debt would not relieve her of liability for the TFRPs unless and until

LAJE's debt had been paid in full.

The SO informed petitioner that, in order for her to consider collection al-

ternatives, petitioner had to provide:  (1) a completed Form 433-A, Collection In-

[*5] formation Statement for Wage Earners and Self-Employed Individuals; (2) supporting financial documentation for the Form 433-A; (3) signed tax returns filed with the Virgin Islands Bureau of Internal Revenue for 2011-2014; and (4) proof of estimated tax payments for the first quarter of 2015 (if due). The SO also explained that she was referring the case to a local revenue officer (RO) in the USVI who would receive and review petitioner's information. The SO instructed petitioner to submit the documents to the RO by May 31, 2015.

Petitioner provided the RO signed tax returns for 2011-2013 and a completed Form 433-A with some supporting financial documentation. On June 18, 2015, the RO held a conference with petitioner to discuss collection alternatives. On the basis of the information petitioner supplied, the RO concluded that petitioner could pay $1,035 per month on a regular installment agreement (IA), but that she might qualify for a monthly payment as low as $350 if a "streamlined" IA were allowed. He emphasized, however, that petitioner could not be approved for either type of IA unless she submitted a signed tax return for 2014.

During a June 29, 2015, followup telephone conference with the SO, petitioner stated that she was not interested in an IA of any sort. Rather, she reiterated her contention that she was not liable for the TFRPs because the new owner of LAJE had assumed its tax liabilities. The SO again explained that another party's

**[\*6]** undertaking to discharge LAJE's unpaid employment tax liabilities did not affect her distinct liability for the TFRPs. Petitioner did not submit a signed tax return for 2014 and did not propose any collection alternative. On July 9, 2015, the SO closed the case and issued a notice of determination sustaining the proposed levy and the NFTL filing. Petitioner timely petitioned this Court seeking redetermination.

The IRS has also assessed TFRPs against Ernest Samuel, another former owner of LAJE, for the same trust fund tax liabilities. During the pendency of petitioner's CDP case, the IRS has received periodic payments toward LAJE's tax liabilities from Mr. Samuel and/or from LAJE's purchaser. For each payment it has received, the IRS has abated a corresponding portion of petitioner's assessed TFRPs for the relevant tax period.

OPINION

A.    Standard of Review

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. Where the taxpayer has properly challenged her underlying tax liability for the period in question, we review the IRS determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the taxpayer's underlying tax

[*7] liability is not properly before us, we review the IRS' determination for abuse of discretion.  Ibid.

A taxpayer may raise a CDP challenge to the existence or amount of her underlying tax liability only if she "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute" it.  Sec. 6330(c)(2)(B).  In determining whether the taxpayer had a prior opportunity to dispute her liability, the regulations distinguish between liabilities that are subject to deficiency procedures and those that are not.  For liabilities subject to deficiency procedures, an opportunity for a post-examination conference with the IRS Appeals Office does not bar the taxpayer (in appropriate circumstances) from contesting her liability in a later CDP proceeding.  See sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.  On the other hand, where a liability is not subject to deficiency procedures, "[a]n opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability."  Ibid.

As assessable penalties, TFRPs are not subject to deficiency procedures. Sec. 6671(a); Shaw v. United States, 331 F.2d 493, 494-496 (9th Cir. 1964); Moore v. Commissioner, 114 T.C. 171, 175 (2000).  Notwithstanding the absence of a notice of deficiency, a taxpayer may be able to dispute her liability for TFRPs

**[\*8]** (without paying them first) by resisting IRS collection efforts through the CDP procedure and then seeking review in this Court. Williams v. Commissioner, 131 T.C. 54, 58 n.4 (2008); Callahan v. Commissioner, 130 T.C. 44, 48 (2008). But this route to prepayment judicial review is available only if the taxpayer "did not otherwise have an opportunity to dispute such tax liability." Sec. 6330(c)(2)(B).

"A taxpayer has the opportunity to dispute his liability for a trust fund recovery penalty when he receives a Letter 1153." Thompson v. Commissioner, T.C. Memo. 2012-87, 103 T.C.M. (CCH) 1470, 1472; see also Pough v. Commissioner, 135 T.C. 344, 349 (2010). Upon receiving a Letter 1153, the taxpayer may appeal the IRS determination of TFRP liability by submitting a protest to the IRS Appeals Office. If a taxpayer fails to avail himself of this opportunity, he is not entitled to advance a later challenge to his liability before the Appeals Office or this Court. Thompson, 103 T.C.M. (CCH) at 1472.

The IRS sent petitioner a Letter 1153 on March 16, 2012. She received this letter on April 2, 2012, as evidenced by her signature on the certified mail receipt. The Letter 1153 informed her of her appeal rights and provided clear instructions about how to appeal. She nevertheless took no action in response to that letter. Because petitioner had, but neglected to avail herself of, a prior opportunity to

[*9] challenge her TFRP liability before the IRS Appeals Office, she is precluded from disputing that liability in this Court. See sec. 6330(c)(2)(B); Thompson, 103 T.C.M. (CCH) at 1472; sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs. We thus review the SO's actions for abuse of discretion only.

B      Analysis

In deciding whether the SO abused her discretion in sustaining the proposed collection actions we consider whether she:  (1) properly verified that the requirements of applicable law and administrative procedure had been met; (2) considered any relevant issues petitioner raised; and (3) considered whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3).

Petitioner contends that she did not receive a fair and impartial CDP hearing because the SO referred her case to an RO in the USVI for the purpose of collecting and reviewing petitioner's financial information.  The SO made this referral pursuant to the IRS' Appeals Referral Investigation (ARI) program.  See Internal Revenue Manual (IRM) pt. 8.22.4.2.1 (Nov. 5, 2013).  By virtue of this referral petitioner was able to present her financial information in a face-to-face meeting with a local IRS officer in the USVI.

[*10] Because petitioner had not previously submitted financial documentation for consideration of a collection alternative, we find that the SO acted properly in making this referral. Although petitioner asserts that the RO was somehow biased against her, there is no credible evidence to support that assertion. Indeed, the RO recommended that petitioner be considered for an IA with monthly payments as low as $350. In any event, there is no evidence that referral of the case to the RO in any way impeded the SO's impartiality. The SO, who conducted the actual CDP hearing, had no previous involvement with petitioner's case. See sec. 6330(b)(3) ("The hearing * * * shall be conducted by an officer or employee who has had no prior involvement with respect to the unpaid tax[.]").

Petitioner's remaining contention is that the IRS cannot collect TFRPs from her because it is receiving (or could receive) payments from third parties for the same underlying tax liabilities. Here, the IRS has two possible alternative sources of payment: LAJE's purchaser, who contractually undertook to pay its delinquent trust fund taxes, and Mr. Samuel, a former co-owner of LAJE, against whom the IRS has also made TFRP assessments.

Section 6672 imposes liability on "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title" who willfully fails to do so. Sec. 6672(a). In this setting, "the employer bears principal liability under

[*11] section 3403 for the trust fund taxes that should have been withheld, and the 'responsible persons' bear derivative liability for those same taxes under section 6672." Dixon v. Commissioner, 141 T.C. 173, 192 (2013). Liability under section 6672 is thus "separate and distinct from the underlying trust fund tax liability of an employer." Hellman v. Commissioner, T.C. Memo. 2013-190, 106 T.C.M. (CCH) 138, 147.

Where TFRPs are assessed, "numerous individuals and/or entities may be liable for redundant penalties deriving from the same unpaid tax." Dixon, 141 T.C. at 192. But under longstanding IRS policy, unpaid trust fund taxes "will be collected only once, whether from the business, or from one or more of its responsible persons." IRM pt. 1.2.14.1.3 (2) (June 9, 2003). "[T]he IRS cross-references payments against the trust fund tax liability of an employer and payments against the section 6672 penalty liability of a responsible person," so that all payments ultimately reduce the TFRP liability of each responsible person. Hellman,106 T.C.M. (CCH) at 147.

The IRS has assessed TFRPs against petitioner and Mr. Samuel, and it is receiving or may receive payments from Mr. Samuel and/or LAJE's purchaser. But section 6672 expressly allows the IRS to seek collection simultaneously from the employer and from all of its responsible persons. "[T]he fact that more than

**[\*12]** one person is responsible for a particular delinquency does not relieve another responsible person of her personal liability, nor can a responsible person avoid collection against herself on the ground that the Government should first collect the tax from someone else." USLIFE Title Ins. Co. of Dallas v. Harbison, 784 F.2d 1238, 1243 (5th Cir. 1986). The fact that "another person also may be liable under Section 6672 does not affect the liability of the person presently subject to suit." Quattrone Accountants, Inc. v. I.R.S., 895 F.2d 921, 926 (3d Cir. 1990).[3]

Until LAJE's unpaid trust fund liabilities are fully satisfied, the IRS' receipt of payments from LAJE's purchaser or another responsible person does not prevent it from collecting the TFRPs owed by petitioner, which represent a separate and distinct liability under section 6672. The IRS has properly credited LAJE's account with all payments made to date, and it has properly abated corres-

---

[3]Where multiple individuals have TFRP liability for the same underlying tax, the Code affords a responsible person a claim for contribution against other responsible persons if he or she has paid the IRS more than his or her "proportionate share of the penalty." Sec. 6672(d). However, a claim for recovery against other responsible persons cannot be made in "an action for collection of such penalty brought by the United States." Sec. 6672(d)(1). Rather, the taxpayer must seek contribution in an action "separate and apart from proceedings to collect the penalty brought by the United States." Thompson, 103 T.C.M. (CCH) at 1472; see also Weber v. Commissioner, 138 T.C. 348, 358 n.8 (2012). Thus, petitioner in this CDP case cannot seek to reduce her liability on the theory that she is being asked to pay more than her proportionate share of LAJE's delinquent taxes.

[*13] ponding portions of petitioner's TFRP liability. The record establishes that the IRS has not yet collected enough to satisfy LAJE's outstanding trust fund liabilities. Until those liabilities are satisfied in full, the IRS is free to seek collection from petitioner and all other available sources of payment.[4]

Our review of the record establishes that the SO properly discharged all of her responsibilities under section 6330(c)(3). Petitioner explicitly declined the SO's conditional offer of an IA and proposed no other collection alternative. In any event, petitioner would not have qualified for a collection alternative because she failed to establish compliance with her ongoing tax obligations. Finding no abuse of discretion in this or any other respect, we will sustain the proposed collection actions.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.

---

[4]Petitioner alleges that LAJE's purchaser has executed an IA with the IRS providing for specified monthly payments. But this agreement covers tax periods different from the seven calendar quarters during 2007-2008 that are in question here. In any event, as explained in the text, the IRS is free to seek collection both from the employer and from its responsible persons until the trust fund taxes have been paid in full.