**STATE OF LOUISIANA, ex rel. William J. GUSTE, Jr., Plaintiff,**

**and**

**Save Our Coast, Inc., et al., Plaintiffs-Appellees, Cross-Appellants,**

**v.**

**Colonel Robert C. LEE, et al., Defendants-Appellants, Cross-Appellees.**

**No. 87–3751.**

United States Court of Appeals, Fifth Circuit.

Sept. 6, 1988.

---

Michael P. Healy, Atty., Jacques B. Gelin, Atty., U.S. Dept. of Justice, Washington, D.C., John Volz, U.S. Atty., William F. Baity, Asst. U.S. Atty., New Orleans, La., for defendants-appellants, cross-appellees.

Osborne, McComiskey & Richardson-Harp, Charles Michael Osborne, New Orleans, La., for Save Our Coast.

Nancy C. Crisman, Katherine P. Ransel, Washington, D.C., for Orleans Audubon, Sierra Club, et al.

Before WISDOM, RUBIN, and JONES, Circuit Judges.

WISDOM, Circuit Judge:

The parties ask this Court to answer the final question in this five year old litigation: Who pays the lawyers? After five private environmental groups and the State of Louisiana successfully prosecuted this action against the United States, the district court awarded attorney fees to the private plaintiffs under the Equal Access to Justice Act. The United States urges this Court to reverse or, at least, to modify the district court's award. The private plaintiffs cross-appeal, arguing that the district court's award was inadequate. Although this Court can address some of the parties' arguments and provide guidance on the main issue, we hold that the question "Who pays the lawyers?" must be reconsidered by the district court.

## I. FACTS AND PRIOR PROCEEDINGS

In 1983 the State of Louisiana and five environmental groups [1] filed this suit challenging the U.S. Army Corps of Engineers' renewal of six permits for shell dredging in almost two million acres along the Gulf Coast and coastal lakes of Louisiana.[2] The

---

1. Save Our Coasts, Inc., The Orleans Audubon Society, Sierra Club, Manchac Fisherman's Assoc., and the Environmental Defense Fund.

2. These waters are some of the most biologically, commercially, and recreationally important waters in the nation. The Corps renewed the permits for dredging in these waters without preparing an environmental impact statement, even though the Corps prepared impact statements for dredging in Texas, Florida, and Alabama, each of which produces less shell then Louisiana. Shell dredging is a disruptive activity that requires "[a] barge equipped with an excavating cutter-head, [which] digs through the shell deposits in reefs typically buried under four to eight feet of sediment". *State of Louisiana v. Lee ("Lee I")*, 758 F.2d 1081, 1085 (5th Cir.1985).

plaintiffs argued that the Corps violated the National Environmental Policy Act (NEPA),[3] by failing to complete an environmental impact statement (EIS) before renewing the permits. The district court first granted summary judgment in favor of the defendant; the court found that the plaintiffs failed to show that the human environmental quality *would be degraded* significantly by the permit renewal. On appeal, this Court reversed, holding that the plaintiffs needed to prove only that the permit renewal *may cause* a significant degradation of some human environmental factor; the plaintiffs had been subjected to an "improper evidentiary burden".[4] On remand, the district court held that the plaintiffs satisfied their evidentiary burden and the Corps's failure to prepare an EIS violated the NEPA. Judgment was entered in favor of the plaintiffs on April 23, 1986.[5]

On July 23, 1986, the private plaintiffs filed a motion for attorney fees under the Equal Access to Justice Act (EAJA).[6] On November 18, 1986, the district court held that the plaintiffs were entitled to attorney fees under the EAJA, and the court referred the quantum issues to a magistrate. On August 10, 1987, the district court adopted the magistrate's recommendation and entered an award in favor of the plaintiffs in the amount of $164,100.85. The defendant and the private plaintiffs appeal.

## II. DISCUSSION

The United States argues that the plaintiffs are not entitled to fees under the EAJA, because "the position of the United States was substantially justified",[7] despite the court's ultimate adverse judgment. The government also argues that the presence of the State of Louisiana, a party ineligible for fees under the EAJA, rendered all plaintiffs ineligible for fees. The United States alternatively contends that the district court erred in awarding one attorney fees at the rate of $125 an hour instead of the statutory rate of $75 per hour. The plaintiffs support the district court's finding of entitlement to fees under the EAJA, but the plaintiffs contend that the fee award was too low. The plaintiffs argue that the district court overcompensated for the State of Louisiana's role, and the court failed to make appropriate cost of living adjustments.

The parties agree, however, on one issue that we must first address, that is the applicable standard of review. "This Court has held that it will overturn an award of [EAJA] attorney's fees when it appears that the district court abused its discretion in making the award."[8] Despite this "highly deferential review" of district court findings, a district court's rulings on questions of law regarding EAJA fee awards require "close scrutiny".[9]

### A. *Substantial Justification*

The EAJA in 28 U.S.C. § 2412(d)(1)(A) (Supp. III 1985) provides:

[A] court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

The United States argues that its position was substantially justified within the meaning of section 2412(d)(1)(A). "The position of the United States for this purpose includes its underlying action as well as its litigating position."[10] The government

---

3. 42 U.S.C. § 4321 *et seq.* (1982).

4. *Lee I,* 758 F.2d at 1084–85.

5. *State ex rel. Guste v. Lee,* 635 F.Supp. 1107 (E.D.La.1986).

6. 28 U.S.C. § 2412 (1982 & Supp. III 1985).

7. 28 U.S.C. § 2412(d)(1)(A) (Supp. III 1985).

8. *USLIFE Title Ins. Co. of Dallas v. Harbison,* 784 F.2d 1238, 1242 (5th Cir.1986).

9. *Houston Agricultural Credit Corp. v. United States,* 736 F.2d 233, 235 (5th Cir.1984).

10. *Griffon v. United States Dept. of Health & Human Servs.,* 832 F.2d 51, 52 (5th Cir.1987).

must, therefore, show that the Corps's permit renewal and its legal defense had "a reasonable basis both in law and in fact".[11]

■ The government argues that the district court erroneously assumed that the position of the United States was not substantially justified because the government lost this case. The district court in its November 18, 1986, minute entry stated: "Consistent with the previous Opinion, Order and Judgment entered herein on April 23, 1986, ... this court finds as a matter of fact that the Defendant's decision not to develop an environmental impact statement was not reasonable. Therefore, Plaintiffs' are clearly entitled to an award of attorneys' fees and costs under the Equal Access to Justice Act ...". This Court recently stated in *Griffon v. U.S. Dept. of Health and Human Services*,[12] that a finding of unreasonable governmental action is not "conclusive on the substantial justification issue, else in this class of case the substantial justification issue would always simply merge with the decision on the merits".[13] Clearly the entitlement to an EAJA award requires a separate analysis, and the district court did not conduct the inquiry the law requires. Notwithstanding the district court's failure to do so, we may affirm if the legal authorities and the record support the conclusion the court reached.

■ The United States argues that its position was substantially justified because its renewal of the shell dredging permits and its litigation position were based on a reasonable interpretation of an uncertain legal standard. This Court's early decisions suggested that, when challenging the government's failure to prepare an EIS, a plaintiff must show that the Corps's permit renewal or other governmental action would significantly degrade the quality of the human environment.[14] It was not until this Court's decision in the first phase of this litigation clarified the standard that it became clear that plaintiff's burden was only to show that the government's action may degrade some human environmental factor.[15] The United States argues that the district court's original judgment in its favor, using a reasonable, although incorrect, legal standard, evidences the reasonableness of the position of the United States. The government urges this Court to heed the Tenth Circuit's statement in *Martinez v. Secretary of Health and Human Services:*[16] "if the governing law is unclear or in flux, it is more likely that the government's position will be substantially justified".

The plaintiffs argue persuasively that the Corps's renewal of the shell dredging permits was not substantially justified. The NEPA requires all government agencies to prepare an EIS whenever the agency recommends "major Federal actions significantly affecting the quality of the human environment".[17] The government's mandatory regulations interpreting the NEPA state that " '[a]ffecting' means will or *may* have an effect on".[18] Clearly the Corps should have prepared an EIS if the Corps determined that the renewal of the

---

11. *USLIFE*, 784 F.2d at 1242.

12. 832 F.2d 51 (5th Cir.1987). *See also Federal Election Comm. v. Rose,* 806 F.2d 1081 (D.C.Cir. 1986).

13. 832 F.2d at 52. Also worth noting, however, is Judge Goldberg's statement in his *Griffon* concurrence: "I view the class of cases where the action is meritorious but not worthy of subsidy as exceedingly small." *Id.* at 55.

14. In *Save Our Wetlands, Inc. v. Sands,* 711 F.2d 634, 644 (5th Cir.1983), this Court stated: "The burden is on the plaintiff attacking the 'no impact statement' decision to show that the quality of the human environment would be significantly degraded by the project." Other cases used different language. *See, e.g., Vieux Carre Prop.*

*Owners, Res. & Assoc. v. Pierce,* 719 F.2d 1272, 1282 (5th Cir.1983); *Image of Greater San Antonio v. Brown,* 570 F.2d 517, 523 (5th Cir.1978); *Hiram Clarke Civic Club, Inc. v. Lynn,* 476 F.2d 421, 425 (5th Cir.1973). See also *Louisiana Wildlife Fed. v. York,* 761 F.2d 1044, 1054 (5th Cir.1985), where Judge Rubin aptly observed: "Prior to our decision in *Lee,* the language of our decisions was neither consistent nor pellucid."

15. *Lee I,* 758 F.2d at 1085.

16. 815 F.2d 1381, 1383 (10th Cir.1987).

17. 42 U.S.C. § 4332(2)(C) (1982).

18. 40 C.F.R. § 1508.3 (1987) (emphasis added).

shell dredging permits might affect the quality of the human environment. Otherwise, the government could issue a "finding of no significant impact," which is "a document ... briefly presenting the reasons why an action ... will not have an effect on the human environment".[19] Although reasonable minds may differ about the probable environmental effect of renewing the shell dredging permits in this case, the record clearly establishes that the Corps knew that the permit renewal might degrade the quality of some human environmental factor. Moreover, the allegedly conflicting Fifth Circuit decisions, while they use different language, give no indication that they disagree with each other, for the latter decision cites the former approvingly.[20] It was unreasonable for the government to rely on the brief statements of this court regarding the governing standard when its own NEPA regulations made its duty clear.[21] The Court's earlier opinions resolved cases turning on the peculiar facts and issues of the particular case, without referring to the pertinent government regulations. The regulations, however, provided the best guidance to the Corps for dealing with a wide variety of facts and issues. The position of the United States, therefore, was not substantially justified.

## B. *Accounting for the State of Louisiana's Role*

To be eligible for EAJA fees a party must have limited financial resources.[22] Because the State of Louisiana is ineligible for fees under the EAJA, the State's participation poses a special problem in this case. The United States argues that the State's participation is a "special circumstance" that makes an award of fees unjust.[23] The United States urges this Court to adopt Judge Meskill's dissenting view in *Sierra Club v. U.S. Army Corps of Engineers:*

> The EAJA was passed for a specific purpose: to ensure that parties would not be prevented from contesting government action simply because they could not afford to litigate the matter. ... When a group of twelve plaintiffs, one of whom has a net worth of over $1 million, join together, congressional concern about ac-

---

**19.** 40 C.F.R. § 1508.13.

**20.** *Save Our Wetlands,* 711 F.2d at 644 (*citing Save Our Ten Acres v. Kreger,* 472 F.2d 463, 466–67 (5th Cir.1973)).

**21.** This case did not involve "a convoluted regulation, difficult to interpret". *Southern Or. Citizens Against Toxic Sprays v. Watt,* 556 F.Supp. 155, 157 (D.Or.), *modified sub nom.* 720 F.2d 1475 (9th Cir.1983), *cert. denied,* 469 U.S. 1028, 105 S.Ct. 446, 83 L.Ed.2d 372 (1984).

**22.** Parties eligible for EAJA fees include: (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed; except that an organization described in section 501(c)(3) of the Internal Revenue Code of 1954 (26 U.S.C. 501(c)(3)) exempt from taxation under section 501(a) of such Code, or a cooperative association as defined in section 15(a) of the Agricultural Marketing Act (12 U.S.C. 1141(a)), may be a party regardless of the net worth of such organization or cooperative association.

28 U.S.C. § 2412(d)(2)(B) (Supp. III 1985). During the legislative hearings for the EAJA, Senator Domenici, one of the bill's main sponsors, stated the purpose of this provision:
> The basic problem this bill seeks to overcome is the inability of many Americans to combat the vast resources of the Government in administrative adjudication. In the usual case, a party has to weigh the high cost of litigation or agency proceedings against the value of the rights to be asserted. Individuals and small businesses are in far too many cases forced to knuckle under to regulations even though they have a direct and substantial impact because they cannot afford the adjudication process. In many cases the Government can proceed in expectation of outlasting its adversary. The purpose of the bill is to redress the balance between the Government acting in its discretionary capacity and the individual.

Award of Attorneys' Fees Against the Federal Government: Hearings on S. 265 Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary, 96th Cong., 2d Sess. 16 (1980). Later he added: "[M]y philosophy ... was not assist the lawyers of this country, and it wasn't to pay attorneys' fees for lawyers". *Id.* at 17.

**23.** *See* 28 U.S.C. § 2412(d)(1)(A) (Supp. III 1985).

cess to the courts is not implicated. Indeed, it seems incongruous to hold that if the ineligible plaintiff alone challenged [the government], fees could not be awarded under the EAJA, but because the ineligible plaintiff was joined by less wealthy friends, fees may be awarded.[24]

The private plaintiffs defend the district court's determination of entitlement to fees, but the plaintiffs argue that the district court overcompensated for the State of Louisiana's participation. The district court reduced the plaintiffs' fee request by one-half using the following rationale:

> Although the plaintiffs, including the State of Louisiana number six by actual account, for purposes of apportioning the fee, it would be proper to group the non-governmental plaintiffs as if they were a single plaintiff.

> All of the attorneys claiming fees represented (at one time or another) all non-governmental plaintiffs. Each of these plaintiffs is a non-profit entity with equal interests, and, more importantly, an equal footing in standing to initiate this litigation. The non-governmental plaintiffs were not indispensable parties to this litigation and anyone of them alone could have instituted this action, and obtained the results ultimately obtained herein.

The plaintiffs contend that in their fee request they properly subtracted the fees and expenses directly attributable to the State of Louisiana's representation, and the district court was obliged to accept the fee request. If the district court was justified in further reducing the fee request, the plaintiffs argue that the fee request should

have been reduced by one-sixth, instead of one-half, because the State was one of six parties. The plaintiffs note that this same strict proportional rule has been used by the *Sierra Club* majority [25] and by other courts.[26]

"[T]here is a dearth of case law" interpreting the "special circumstances" exception of the EAJA.[27] The legislative history reveals, however, that this " 'safety valve' ... gives the court discretion to deny awards where equitable considerations dictate an award should not be made".[28] It was "designed to mitigate the harsh effects of the strict 'substantially justified' standard".[29] Apparently the "safety valve" could be applied in a wide variety of cases. The Justice Department, for example, once foresaw a problem similar to the one in this case when the Department made the following recommendation:

> [I]f an eligible prevailing party has litigated on behalf of a corporation or entity that is ineligible based on net worth or numbers of employees, *e.g.*, a trade association, Department attorneys should argue that this attempt to avoid the eligibility limitations of the Act constitutes special circumstances which make an award unjust.[30]

And in *Oguachuba v. I.N.S.*,[31] the Second Circuit held that the petitioner's "extraordinary persistence in evading the lawful efforts of the INS to deport him to Nigeria, his flagrant contempt for United States law and ... his ... decision not to acquiesce in deportation constitute[d] the 'special circumstances' that make it inequitable to

---

**24.** 776 F.2d 383, 394 (2d Cir.1985).

**25.** 776 F.2d at 393.

**26.** *See, e.g.,* Citizens Council of Delaware County v. Brinegar, 741 F.2d 584, 597 (3d Cir.1984); *American Academy of Pediatrics v. Heckler,* 594 F.Supp. 69 (D.D.C.1984).

**27.** Note, *Determining Fees for Fees Under the Equal Access to Justice Act: Accomplishing the Act's Goals,* 9 Cardozo L.Rev. 1091, 1099 n. 37 (1988); *see also,* Note *Reenacting the Equal Access to Justice Act: A Proposal for Automatic Attorney's Fee Awards,* 94 Yale L.J. 1207, 1212–13 (1985).

**28.** H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S.Code Cong. & Admin. News at 4953, 4990.

**29.** Note, *The Equal Access to Justice Act in the Federal Courts,* 84 Colum.L.Rev. 1089, 1116 (1984).

**30.** Office of Legal Policy, U.S. Dept. of Justice, Award of Attorney Fees and other Expenses in Judicial Proceedings Under the Equal Access to Justice Act 41 (undated).

**31.** 706 F.2d 93, 94 (2d Cir.1983).

award him attorneys' fees under the EAJA".

■ We hold that in special circumstances the participation of a party ineligible for EAJA fees may make a fee award for other eligible parties unjust. Judge Meskill's concern in *Sierra Club* is legitimate. When parties eligible for EAJA fees join parties ineligible for EAJA fees, the district court must account for the free-rider problems that will inevitably exist.[32] If the party ineligible for fees is fully willing and able to prosecute the action against the United States, the parties eligible for EAJA fees should not be able to take a free ride through the judicial process at the government's expense. Conversely, if the ineligible party's participation is nominal or narrow, then the eligible parties should not be denied the access that Congress sought to ensure by enacting the EAJA.

■ Unfortunately, the district court did not address directly the argument of the United States that the State of Louisiana's participation in this case makes an award of fees under the EAJA unjust. The plaintiffs offer an affidavit of a state assistant attorney general as evidence that the State of Louisiana would not have brought this action without the participation of the private environmental groups. As a court of review, however, we cannot give weight to such evidence, which has not been reviewed by the district court. The record in this case is unclear about the extent of the State of Louisiana's participation, but at one time the private plaintiffs argued: "The State is clearly not a nominal party. Important, cognizable interests are unique to the State and a substantial portion of her citizens would be unrepresented without the State's participation in this suit." The complaint in this suit was signed by the state attorney general and its chief environmental enforcement attorney. The record calls for the district court to consider the United States' "special circumstance" argument.

When reviewing this issue, the district court must be given broad discretion. The district court cannot, as the plaintiffs argue, be obliged to accept the plaintiffs' fee request or be constrained by the strict proportional rule used by the *Sierra Club* Court. The district court should consider whether the party ineligible for EAJA fees was fully willing and able to prosecute this suit against the United States. The district court should consider whether the eligible and ineligible parties had overlapping but not coextensive interests. And the district court should consider whether the ineligible party was willing to commit a limited amount of resources to this action. After reconsideration, the district court may readopt its original formula, but the court must make its decision using the rationale explained in this opinion. The district court correctly stated in its earlier order that "there is no exact formula to determine what portion of an attorney's representation is attributable to a particular client". We suggest that the district court utilize its equitable discretion in reconsidering the facts.

C. *The Enhanced Fee Award and the Denial of Cost of Living Adjustments*

The EAJA provides that "attorney fees shall not be awarded in excess of $75.00 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee".[33] The district court awarded one attorney in this case, Mr. Nicholas Yost, an enhanced fee of $125 an hour. The district court denied, however, the request of two attorneys for plaintiffs for cost of living adjustments. The United States challenges the enhanced fee, and the plaintiffs challenge the denial of the cost of living adjustments.

---

**32.** This problem is akin to the inefficiencies associated with indemnity where multiple claims are brought without a class action. *See generally* R. Posner, *Economic Analysis of Law* 538 (3d ed. 1986).

**33.** 28 U.S.C. § 2412(d)(2)(A)(ii) (Supp. III 1985).

■ The United States argues that the district court erred by awarding Mr. Yost attorney fees at $125 per hour. Recently, in *Baker v. Bowen* [34] this Court enunciated the standard for considering fees in excess of $75 an hour:

> The district court should award an increased rate only if it is persuaded by convincing evidence: (1) that the number of competent lawyers who will handle [such] cases is so limited that individuals who have possibly valid claims are unable reasonably to secure representation, *and* (2) that by increasing the fee, the availability of lawyers for these cases will actually be increased. [35]

The district court does not seem to have complied with this standard when it awarded an enhanced fee award; the court found insufficient evidence that "qualified counsel refused to undertake representation in this case because of fee considerations". The court reasoned that higher fees were appropriate because of the litigation results and the exceptional qualifications of Mr. Yost. We suggest that the district court reconsider its award to Mr. Yost in the light of *Baker v. Bowen*.

■ The plaintiffs also persuasively argue that the district court made a miscalculation in denying two attorneys cost of living adjustments. Again, in *Baker v. Bowen* this Court held that "consistent with the great weight of authority ... the cost-of-living adjustment of $75 an hour should be measured from the date of enactment of the EAJA in 1981 not the reenactment in 1985". [36] The district court erred when it made the opposite determination.

### III. CONCLUSION

We reject the defendant's argument that the position of the United States was substantially justified. On remand, however, the district court should reconsider whether the State of Louisiana's participation in this case makes an award of EAJA fees unjust. We suggest that the district court reconsider its award of enhanced fees for Mr. Yost. We hold that the cost of living adjustments for two other attorneys should be adjusted by measuring the cost of living in 1981 in the light of today's costs. For these reasons, the district court's judgment is AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

---

**34.** 839 F.2d 1075 (5th Cir.1988).

**35.** *Id.* at 1085.

**36.** *Id.* at 1084.