UNITED STATES of America, Plaintiff–Appellee,

v.

27.09 ACRES OF LAND, MORE OR LESS, SITUATED IN the TOWN OF HARRISON AND the TOWN OF NORTH CASTLE; The County of Westchester, and unknown others, Defendants,

Purchase Environmental Protective Association, Inc., Defendant–Intervenor–Appellant,

Town of Harrison, Defendant–Intervenor.

No. 2204, Docket 94–6137.

United States Court of Appeals, Second Circuit.

Submitted July 5, 1994.

Decided Dec. 19, 1994.

Donald W. Stever, Jr., New York City (Sidley & Austin, of counsel), for defendant-intervenor-appellant.

Diana J. Hassel, Asst. U.S. Atty. (Roger S. Hayes, U.S. Atty., Paul K. Milmed, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for plaintiff-appellee.

Before: WINTER and JACOBS, Circuit Judges, and MUKASEY, District Judge.*

JACOBS, Circuit Judge:

For the second time before this Court, defendant-intervenor-appellant Purchase Environmental Protective Association, Inc. (the "Association") appeals from an order of the United States District Court for the Southern District of New York (Lasker, J.), denying the Association's motion for an award of attorney's fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412 (Supp.1993) ("EAJA"). Earlier, we held the Association's appeal was premature because no final judgment had been entered, and we remanded to the district court for further proceedings, this panel retaining appellate jurisdiction. *United States v. 27.09 Acres of Land,* 1 F.3d 107 (2d Cir.1993). The district court entered final judgment on April 25, 1994, denying the Association's motion for attorney's fees and dismissing the action with prejudice. This appeal, which decides the merits of the Association's claim for attorney's fees, is taken on submission without

---

* Honorable Michael B. Mukasey, United States District Judge for the Southern District of New York, sitting by designation.

further briefing, because the arguments have been adequately presented in the briefs and record, and in the oral argument of the prior appeal. *See* Fed.R.App.P. 34(a); Second Circuit Local Rule 34(d)(1)(iii). The district court found that the fees sought were expended during a discrete early phase of the litigation during which the Association achieved nothing but its own intervention, and that the Association's efforts in the later, productive phase of the litigation were marginal, duplicative and unnecessary because of the laboring oar taken by parties whose fees are not recoverable under EAJA. We now affirm on the ground that the district court did not abuse its discretion in treating these factors as "special circumstances mak[ing] an award unjust." *See* 28 U.S.C. § 2412(d)(1)(A).

## Background

The underlying facts and the procedural history are set forth in our prior opinion, *United States v. 27.09 Acres of Land,* 1 F.3d 107 (2d Cir.1993). Familiarity with these extended and fully-reported proceedings is assumed, and in any event can be achieved by review of the three district court opinions chronologically listed here. *United States v. 27.09 Acres of Land,* 737 F.Supp. 277 (S.D.N.Y.1990) ("*27.09 Acres I* "); *United States v. 27.09 Acres of Land,* 760 F.Supp. 345 (S.D.N.Y.1991) ("*27.09 Acres II* "); *United States v. 27.09 Acres of Land,* 808 F.Supp. 1030 (S.D.N.Y.1992) ("*27.09 Acres III* "). We recount, therefore, only the facts that bear upon our disposition of the issue presented.

In March 1988 the United States commenced condemnation proceedings to acquire land owned by the County of Westchester, on which the United States Postal Service planned to build a new facility. The selection of this site was controversial, and Westchester vigorously opposed the condemnation action. Both the Town of Harrison and the Association moved to intervene as Westchester's co-defendants.

All three defendants sought an order enjoining the condemnation pending compliance by the Postal Service with its own wetlands regulations, and with the environmental review process required by the National Environmental Policy Act, 42 U.S.C. §§ 4321–4347 (1988) ("NEPA"). The City of New York commenced a separate action soon thereafter to protect its watershed and drinking water resources (*City of New York v. United States Postal Service,* 760 F.Supp. 345), and that lawsuit was deemed a related case. Thus by February 1991 there were four parties aligned in opposition to the condemnation proceedings.

As we explained in our prior opinion, "[t]his litigation proceeded in two distinct phases." 1 F.3d at 109. In the first phase, the Association and Harrison filed their motions to intervene and, joining with Westchester, moved for a preliminary injunction and partial summary judgment. The central issue of the substantive motions was whether the Postal Service "had to comply with the environmental review process required by [NEPA]" before it could proceed with the condemnation. *27.09 Acres III,* 808 F.Supp. at 1032. Also at issue was whether the Postal Service had violated its own wetlands regulations. On May 15, 1990, the district court granted the motions to intervene, "but denied the substantive motions in their entirety." 1 F.3d at 109 (citing *27.09 Acres I* ). The Postal Service subsequently condemned the property.

Throughout this first phase of the litigation, the Association was represented by the law firm of Sidley & Austin. Shortly after the district court's opinion in *27.09 Acres I,* the Association ran out of litigation funds and terminated its relationship with Sidley & Austin, substituting as counsel a lawyer who was the Association's president and who furnished his services without charge.

After the issuance of *27.09 Acres I* and the substitution of counsel by the Association, the litigation entered a second phase. The Association became less active during this phase, joining in the submissions of the other parties, and relying on the other parties' experts. Meanwhile, the Postal Service conducted a review pursuant to NEPA and its own regulations, and issued a final Environmental Assessment in October 1990 that concluded (*inter alia* ) that the proposed facility would have no significant impact on the environment and that a full Environmental Im-

pact Statement ("EIS") therefore was not required. In early 1991, the four defendants moved for a preliminary injunction barring construction of the new facility until the Service prepared an EIS. On March 28, 1991, the district court granted that motion, holding that the defendants demonstrated a likelihood of success on the merits because they established that the Postal Service was arbitrary and capricious in finding no significant environmental impact. *27.09 Acres II,* 760 F.Supp. at 355.

The United States filed a notice of appeal, but dropped the appeal after the Postal Service changed its plans and decided to build the new facility on another parcel of land that was already developed. Because the Service had no further need for the Westchester site, it negotiated with the County to return the property and recover the money paid for it. On November 19, 1991, the Postal Service entered into a Memorandum of Understanding with Westchester implementing these arrangements, and deeds were executed transferring title back to the County.[1]

In June 1992, the United States circulated among the parties a Stipulation and Order of Settlement and Dismissal of the condemnation action. The proposed stipulation included a provision barring costs and attorney's fees. Westchester signed the stipulation, but the Association and Harrison did not. Nothing further transpired on the merits.

On August 7, 1992, the Association submitted an application under EAJA for a $229,-149.15 award of attorney's fees and expenses, representing charges by Sidley & Austin for services from the inception of the litigation until June 1990. The United States opposed the application, arguing *inter alia* that its position was substantially justified, that it prevailed in the phase of the litigation for which the fees were sought, that the Association was a supernumerary in the latter phase of the proceedings, and that special circumstances justified a denial of fees. On December 7, 1992, the district court denied the Association's application. *27.09 Acres III,*

808 F.Supp. at 1032. The Association appealed, and, after remanding for entry of a final judgment, we now consider the merits of the Association's claim.

## Discussion

■ EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). In denying attorney's fees in this case, the district court held (a) that the position of the United States was "substantially justified" and (b) that "special circumstances" justified the denial of an award in this case. We conclude that the district court did not abuse its discretion in finding that special circumstances make an award of fees unjust. Because we affirm on that basis, we have no occasion to examine the question of substantial justification. *Cf. Federal Election Comm'n v. Political Contributions Data, Inc.,* 995 F.2d 383, 386 (2d Cir.1993) (absent special circumstances, court must award fees unless United States position is substantially justified), *cert. denied,* — U.S. —, 114 S.Ct. 1064, 127 L.Ed.2d 384 (1994).

■ The special circumstances provision of the statute "explicitly directs a court to apply traditional equitable principles in ruling upon an application for counsel fees by a prevailing party." *Oguachuba v. I.N.S.,* 706 F.2d 93, 98 (2d Cir.1983). This rule " 'gives the court discretion to deny awards where equitable considerations dictate an award should not be made.' " *Id.* (quoting H.R.Rep. No. 1418, 96th Cong., 2d Sess. at 11 (1980)). Our review of the district court's denial of attorney's fees is narrow; we will only reverse if we find the court abused its discretion in refusing to award fees. *See Pierce v. Underwood,* 487 U.S. 552, 562–63, 108 S.Ct. 2541, 2548–49, 101 L.Ed.2d 490 (1988); *Cassuto v. Commissioner of Internal*

---

1. Because the land was adjacent to the Westchester County Airport, the Federal Aviation Administration also participated in the negotiations and

was a party to the Memorandum, which reflected an intention that the land would be dedicated solely to airport use.

*Revenue,* 936 F.2d 736, 740 (2d Cir.1991); *Taylor v. United States,* 815 F.2d 249, 252–53 (3d Cir.1987) (abuse of discretion review of special circumstances determinations).

The first special circumstance is that the "litigation proceeded in two distinct phases," *27.09 Acres,* 1 F.3d at 109, and that the fees sought were incurred only in the unsuccessful initial phase. Each phase addressed entirely distinct legal issues: in the first, the primary issue was whether the Postal Service could condemn the land before completing a review pursuant to NEPA; in the second, the main issue was whether, subsequent to condemnation, the Postal Service could construct the new facility without preparing an EIS. The Association was active in the unsuccessful initial phase (when it incurred the fees it seeks to recover under EAJA), but took a back seat during the successful latter phase, relying on expert affidavits prepared by the three ineligible codefendants, and joining in the papers submitted by them. These circumstances provoke a question as to whether or not the expenditure of attorney's fees produced or led to success.

There were three main issues litigated in phase one: (1) the Association's motion for intervention; (2) the claim that the Postal Service violated its wetlands regulations; and (3) the claim that the Postal Service was required to follow the NEPA review process before it could condemn the property. The Association won permission to intervene. Although the Association also won on the technical issue of the Postal Service's failure to comply with its own wetlands regulations, the district court refused to grant any relief because the Postal Service had already taken steps to rectify the situation, and accordingly dismissed the defendants' claims on this issue. *See 27.09 Acres I,* 737 F.Supp. at 287–89. For that reason, the Service's compliance with its wetlands regulations cannot be deemed in itself a success on the merits. The defendants lost on several other tangential claims they had raised. Moreover, they lost on their primary claim: that the Postal Service could not condemn the site without first conducting a review pursuant to NEPA.

In *27.09 Acres III,* the district court concluded that "[t]he issues on which [the Association] prevailed in *27.09 Acres I* were entirely secondary to the gravamen of that decision and in no way furthered the aim of voiding the Postal Service's condemnation of the site...." 808 F.Supp. at 1032. We agree. If the litigation had ended with phase I, the Association would have had no claim to status as a prevailing party. *See Farrar v. Hobby,* —— U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) ("to qualify as a prevailing party, a ... plaintiff must obtain at least some relief on the merits of his claim"); *see also LaRouche v. Kezer,* 20 F.3d 68, 71 (2d Cir.1994) (while "[a] party need not succeed on every issue raised by him," he needs to attain "[v]ictory on a significant claim"). Few litigants, however, prevail by way of a straight ascending line; some claimants succeed only through an interim advantage or on a final gambit. A party's shifting fortunes over the course of a lawsuit therefore cannot impair its ultimate status as a "prevailing party." *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (party is "prevailing" so long as it "succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit"); *Hanrahan v. Hampton,* 446 U.S. 754, 757–58, 100 S.Ct. 1987, 1989–90, 64 L.Ed.2d 670 (1980) (to be prevailing, party does not necessarily have to succeed on every claim, but must prevail on the merits of at least some substantial part of its case). However, where all of the fees were expended on discrete efforts that achieved no appreciable advantage, and where the claim of the prevailing parties rests largely on a result to which the claimant made no contribution, a district court may consider whether special circumstances render an award of attorney's fees less just.[2] This holding comports with the general case law regarding attorney's

---

2. Because it is the *party* who applies for the fees, rather than the attorneys, *Oguachuba,* 706 F.2d at 97–98, we look to the party's participation in the litigation, the positions it took, and the results it obtained, over the course of the entire litigation. Where, as here, the party in question did not substantially contribute to success on the merits, the justness of an attorney's fee award to that party is diminished.

fee awards, and is particularly appropriate where a court is balancing the equities under the "special circumstances" section of the statute. *See, e.g., Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940 ("work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.' ... [T]herefore no fee may be awarded for services on the unsuccessful claim." (citation omitted)); *Sands v. Runyon*, 28 F.3d 1323, 1333 (2d Cir.1994) (affirming reduction of fees for work on unsuccessful, meritless and groundless claims).

In concluding that special circumstances made an award of fees unjust, the district court also relied on the fact that the Association was one of four parties on its side of the controversy, and the only one eligible to claim fees under EAJA.[3] *See 27.09 Acres III*, 808 F.Supp. at 1036–37. The Association argues that this was an improper consideration and incompatible with our decision in *Sierra Club v. United States Army Corps of Engineers*, 776 F.2d 383 (2d Cir.1985), *cert. denied*, 475 U.S. 1084, 106 S.Ct. 1464, 89 L.Ed.2d 720 (1986). In *Sierra Club*, the Government argued that no fees should be awarded to anyone because one of the twelve adverse parties was statutorily ineligible to collect fees. The panel majority rejected this argument, holding that the district court must "award fees based on the ratio of eligible plaintiffs to total plaintiffs ...." *Id.* at 393–94.

In explaining its decision to deny the Association's fee application, the district court looked to the *Sierra Club* dissent, 776 F.2d at 394 (Meskill, dissenting), and to the Fifth Circuit's opinion in *State of La., ex rel. Guste v. Lee*, 853 F.2d 1219 (5th Cir.1988), which cites that dissent. *See 27.09 Acres III*, 808 F.Supp. at 1036–37. We must therefore consider whether the outcome here is compatible with our holding and analysis in *Sierra Club*.

We conclude that there is no inconsistency between *Sierra Club* and a finding of special circumstances in this case. Application of the same equitable principles will yield different results in different cases. Apportionment was required in *Sierra Club* where there were four fee applicants out of a total of twelve plaintiffs and where "only [those] four plaintiffs contributed to the costs of the litigation." *Sierra Club*, 776 F.2d at 386 n. 1. The single EAJA-ineligible plaintiff therefore did not contribute to the cost of the litigation. The holding in *Sierra Club*, requiring apportionment, bears upon the issue of the reasonableness of the fee. *Cf. Washington Dep't of Wildlife v. Stubblefield*, 739 F.Supp. 1428, 1432 (W.D.Wash.1989) ("apportionment is part of the issue of the reasonableness of the fee"). The necessary predicate for that holding is that the presence of a passive ineligible party cannot justify rejecting the claim of eligible parties that in fact did the work.

Here, by contrast, there were three ineligible parties joined with the Association, each of whom contributed substantially to the litigation. Moreover, the presence and participation of the Association was found to be unnecessary, because the Association's "interests were already being protected by others quite capable of carrying the ball," and because, "regardless of [the Association's] activities, the other parties vigorously pressed their challenge to the Postal Service's action." *27.09 Acres III*, 808 F.Supp. at 1036–37. Given its vantage point, "the district court may have insights not conveyed by the record," and we therefore accept the district court's description of the underlying facts. *Pierce*, 487 U.S. at 560, 108 S.Ct. at 2547–48. We cannot say that the district court abused its discretion in concluding that a fee award

3. The statute, at 28 U.S.C. § 2412(d)(2)(B), sets forth eligibility requirements in its definition of "party":

"party" means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed; except that an organization described in section 501(c)(3) of the Internal Revenue Code of 1986 (26 U.S.C. 501(c)(3)) exempt from taxation under section 501(a) of such Code, or a cooperative association as defined in section 15(a) of the Agricultural Marketing Act (12 U.S.C. 1141j(a)), may be a party regardless of the net worth of such organization or cooperative association.

would have been unjust in the circumstances presented.

■ This result is fully compatible with our decision in *Sierra Club*. Where the role of the ineligible party is nominal or passive, then EAJA fees will be available to the eligible parties—subject, of course, to apportionment, and assuming that no other reason justifies denial of the application. On the other hand, where one or more ineligible parties are willing and able to pursue the litigation against the United States, "the parties eligible for EAJA fees should not be able to take a free ride through the judicial process at the government's expense." *Lee*, 853 F.2d at 1225. "The basic question is whether the actions of the eligible parties and their counsel were reasonable and necessary to the successful prosecution of the case." *Stubblefield*, 739 F.Supp. at 1432. These considerations fulfill the purpose of EAJA, which is to "remove an obstacle to contesting unreasonable government action through litigation." *Oguachuba*, 706 F.2d at 98 (internal quotations and citation omitted). At the same time, as other courts have held, EAJA should be administered in ways that deter free riding by unnecessary parties. *See Lee*, 853 F.2d at 1225; *American Ass'n of Retired Persons v. E.E.O.C.*, 873 F.2d 402, 406–07 (D.C.Cir.1989).

EAJA does not finance the joinder of every party having an articulable interest in a case. The Association, "whose interests were already being protected by others," *27.09 Acres III*, 808 F.Supp. at 1036, obtained no relief on the merits in phase I and acted as a classic free-rider during the more important second phase of the litigation. General equitable principles support the district court's finding that an award of fees would have been unjust.

### Conclusion

For these reasons, we affirm the district court's denial of the Association's motion for fees under EAJA.