E. GRADY JOLLY, Circuit Judge:
The National-American Wholesale Grocers’ Association/Intemational Foodservice Distributors Association (“NAWGA”) is a national trade association comprised of over 200 wholesale grocery distribution companies, a number of which are multi-billion dollar corporations. NAWGA prevailed in litigation against the United States. It now seeks an award of attorneys’ fees under the Equal Access to Justice Act (“EAJA”), 28 U.S.C. § 2412 et. seq. EAJA limits eligibility for a fee award to entities based on net worth and number of employees. The sole question presented by this appeal is whether eligibility of a trade association for an EAJA award is determined by reference to the assets and size of the association itself or whether the association’s eligibility additionally hinges on the assets and size of its constituent members. We conclude .that, under the plain language of the statute, an association’s eligibility for a fee award- under EAJA § 2412(d)(2)(B) depends only on the association’s net worth and size, and we affirm the district court’s award of attorneys’ fees and expenses in the amount of $163,083.75 to NAWGA.
I
NAWGA incurred the attorneys’ fees at issue when it and two other meat and poultry industry trade associations (together, the “Trade Associations”) brought this action on behalf of their members to delay implementation of an interim final rule promulgated by the United States Department of Agriculture (“USDA”). The interim rule, which required packages of meat to contain safe handling and preparation instructions, provided only for a 30-day, post-rule comment period. USDA solicited no comments prior to its promulgation of the interim rule.
In the merits phase of this action, the Trade Associations challenged USDA’s failure to comply with the notice and comment requirements of the Administrative Procedure Act (the “APA”), 5 U.S.C. § 553. In October 1993, the district court entered judgment for the Trade Associations, finding that USDA violated the APA and preliminarily enjoining it from enforcing the interim rule. USDA then issued a proposed rule in conformity with the APA. Following a full comment period, USDA published a final rule on March 28, 1994, imposing essentially the same labelling requirements. The Trade Associations then moved to dismiss their action against USDA as moot. The district court granted dismissal on May 31,1994. ■
On June 30,1994, NAWGA, which financed the APA litigation for itself and its co-plaintiffs out of its general operating budget, alone applied for attorneys’ fees under *580 EAJA, 28 U.S.C. § 2412(d). It is this phase of the case that is at issue on this appeal. USDA vigorously contested NAWGA’s eligibility for an EAJA award, contending, among other things, that NAWGA, which employs only 36 full-time employees and has a net worth of approximately $3.3 million, exceeded EAJA’s eligibility limitations for net worth and size. To be eligible for a fee award, an association must employ no more than 500 employees and have a net worth of not more than $7 million. 28 U.S.C. § 2412(d)(2)(B)(ii). NAWGA was ineligible for an EAJA award, USDA argued, because § 2412(d)(2)(B)(ii) requires the aggregation of the net worth and size of a trade associations’ individual members when the association is representing primarily the members’ interests in litigation. USDA .also argued that NAWGA is ineligible for a fee award because the individual ineligible members of the Trade Associations would receive a “free ride” if the costs of the APA litigation is paid for under EAJA.
The district court rejected USDA’s aggregation and “free rider” arguments and awarded NAWGA fees and expenses in the amount of $163,083.75. USDA filed a timely notice of appeal from the EAJA award on the question of NAWGA’s eligibility for fees.
II
We review the conclusions of law underlying a denial of attorneys’ fees de novo. Perales v. Casillas, 950 F.2d 1066, 1072 (5th Cir.1992). Because EAJA ;is a partial waiver of sovereign immunity, it must be strictly construed in the government’s favor. Ardestani v. INS, 502 U.S. 129, 137, 112 S.Ct. 515, 520-21, 116 L.Ed.2d 496 (1991); Perales, 950 F.2d at 1076.
Whether the aggregation of the net worth and size of an association’s members is required when determining the association’s eligibility for a fee award is a question of the proper interpretation of § 2412(d)(2)(B)(ii).[1] A prevailing party is eligible for fees and expenses only if he meets the statutory definition of a party:
(d)(2) For purposes of this subsection—
(B) “party” means ... (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed; except .that an organization described in section 501(c)(3) of the Internal Revenue Code of 1986 (26 U.S.C. 501(c)(3)) exempt from taxation under section 501(a) of such Code, or a cooperative association as defined in section 15(a) of Agricultural Marketing Act (12 U.S.C. 1141(j)(a)), may be a party regardless of the net worth of such organization or cooperative association * * *.
28 U.S.C. § 2412(d)(2) (emphasis added).
NAWGA urges us to accept the district court’s construction of § 2412(d)(2) that a prevailing association is a “parly” if it meets the provision’s bright-line rule for eligibility, and nothing more. Although USDA concedes that “neither the language of the statute nor the legislative history explicitly directs aggregation of the net worth and number of employees of an association’s members,” it nevertheless contends that structure of § 2412(d)(2)(B) betrays an implicit aggregation requirement that is applicable here.
As support for its construction, USDA points out • that § 2412(d)(2) explicitly exempts agricultural cooperatives and nonprofit organizations from EAJA’s net worth *581 limit.[2] Citing Senator DeConeini’s post-enactment explanation of the provision,[3] USDA characterizes this treatment of agricultural cooperatives and non-profits as a waiver of the statute’s “implicit net worth aggregation requirement.” From these “exceptions”[4] and the statutory canon expressio unius est exclusio, USDA concludes that “§ 2412(d)(2)(B)(ii) should be construed to exempt from the aggregation requirement only the ... types of associations specifically referred to by Congress, and no others.”
We examine first the language and structure of EAJA to determine the proper meaning of the term “party.” Section 2412(d) provides that attorneys’ fees shall be awarded to prevailing parties and explicitly includes in the definition of a party any “association, ... the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed.” § 2412(d)(2)(B). This language is clear and unambiguous. Nowhere does it limit EAJA’s application only to associations whose members individually are eligible for EAJA fees. Instead, it imposes a ceiling only on the net worth and size, of the association itself. It was open to Congress to include additional limitations on eligibility, such as the aggregation rule that USDA advocates, but Congress did not do so.
We are unpersuaded, moreover, that EAJA’s special eligibility rule for agricultural cooperatives and non-profit organizations is evidence of an implicit aggregation rule. Neither the statute nor its legislative history suggest that the special eligibility rule for agricultural cooperatives and non-profits was motivated by concerns about ineligibility resulting from the aggregation of employees and assets.[5] Indeed, this rule does not even address the subject of “aggregation”; instead, it allows a single agricultural cooperative or a single nonprofit organization to qualify for an EAJA fee award regardless of the singular net worth of that entity.[6]
Neither are we persuaded, on the basis of Senator DeConcini’s statement, that this special eligibility rule is to be construed as a. waiver of some implicit aggregation requirement. As the Supreme Court has made clear, post-enactment legislative history does not control a statute’s interpretation. Pierce v. Undefwood, 487 U.S. 552, 566, 108 S.Ct. 2541, 2550-51, 101 L.Ed.2d 490 (1988). In sum, we are unable to discern in the unadorned words of § 2142(d)(2)(B) ah unwritten aggregation requirement. As we have stressed repeatedly, we must “presume that a legislature says in a statute what it means *582 and means in a statute what it says.” U.S. v. Meeks, 69 F.3d 742, 744 (5th Cir.1995) (citing Connecticut Nat’l Bank v. Germain, 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)).
Notwithstanding this cardinal canon of statutory construction — that the words of a statute will be given their plain meaning absent ambiguity — USDA contends that an implicit aggregation rule also is necessary in order to avoid a result “that is plainly at variance with the policy of the legislation as a whole.” Congress intended in EAJA, USDA argues, to reduce the financial deterrent only to small entities in litigating against the United States; it did not intend fee awards to extend to associations like NAWGA, whose membership includes multi-billion dollar corporations that have bountiful coffers from which to pay attorneys’ fees. Such an “absurd result” is avoided, USDA maintains, by recognizing an implicit aggregation rule.
Because we think that judicial inquiry into the applicability of § 2414(d)(2)(B) must begin and must end with § 2414(d)(2)(B)’s clear and unambiguous words, we also reject USDA’s contention that aggregation will effect Congress’ intent. The statute’s purpose, by its plain language, is to make associations eligible for an award on the basis of each association’s independent qualifications — not the qualifications of its constituent members. Congress surely understood that “associations” are made up of constituent members, some more wealthy and larger than others, yet who have joined together to further a common business purpose. It is not implausible that Congress would think it appropriate to treat associations qua associations instead of atomizing the body politic of each association, then inspecting and distinguishing each component member to determine whether each is individually eligible. Neither is it inconceivable that Congress envisioned an association as the only viable vehicle for certain small businesses to prosecute their claims against the United States. In order to deny the benefits of an EAJA award to an association’s wealthy, ineligible members, USDA would have us unfairly exclude from EAJA’s clear reach an association’s eligible members.
USDA also fails to recognize that any implicit aggregation rule may well have application to entities other than associations. Section 2412(d)(2) lists as eligible parties the owners of unincorporated businesses, as well as partnerships, corporations, and units of local government. Although we expressly do not pass on the question, we find it unlikely that Congress intended an implicit aggregation rule to apply to these entities. Congress, for example, presumably did not intend that the courts determine a corporation’s eligibility for a fee award by reference to the assets and employees of the corporation’s individual shareholders.
In sum, we believe that the statute’s plain language provides no basis for the aggregation requirement that the government would have us engraft.[7] Accordingly, we AFFIRM the district court’s award of EAJA fees to NAWGA in the amount of $163,-083.75.
AFFIRMED.

. The circuit courts have divided on the issue of aggregation. The United States Court of Appeals for the Sixth Circuit, in National Truck Equipment Association v. National Highway Traffic Safety Administration, ruled that aggregation is appropriate where an association's members received significant benefits from affiliating with the association in the litigation. 972 F.2d 669 (6th Cir.1992). In contrast, the United States Court of Appeals for the Ninth Circuit, in Love v. Reilly, held that where an association is a legitimate party with standing in litigation, the fact that an ineligible constituent member benefitted from the litigation does not preclude an EAJA fee award to the association. 924 F.2d 1492, 1494 (9th Cir.1991).

. Because of this carve out, non-profits and agricultural cooperatives qualify for an EAJA fee award even if their net assets exceed $7 million.

. Senator DeConcini remarked that:
In the West, and I suspect in other parts of the country, small farmers often band together to form agricultural cooperatives. They have often been considered as a unit particularly in determining their assets for insurance and borrowing purposes. Such aggregate treatment would cause the whole cooperative to exceed the [then] $5 million limitation.
Reauthorization of EAJA, Hearing Before the Sub-comm. on Administrative Practice and Procedure of the Senate Comm, on the Judiciary, 98th Cong., 1st Sess. 17 (April 14, 1983).

. USDA also notes that Congress has clarified the definition of "party" since enacting EAJA, to express its intent that a local labor union's "entitlement to fees should be determined without regard to the assets and/or employees of the international union with which the local is affiliated.” H.R.Rep. No. 99-120, 99th Cong., 1st Sess. at 17., reprinted in 1985 U.S.S.C.A.N. 132, 146.

. Congress may have been motivated by its desire to preserve the assets of non-profits for charitable purposes and to maintain the assets of cooperatives for use in farmer cooperative ventures, however the net worth of these entities might be calculated. See Gregory C. Sisk, The Essentials of the Equal Access to Justice Act: Court Awards of Attorney’s Fees for Unreasonable Government Conduct, 55 LaX.Rev. 217, 360 (1995).

. Significantly, the proof of aggregation that USDA offers does not support the particular aggregation rule it advances: to determine an association’s EAJA eligibility, the net worth and number of employees of an association's constituent members are aggregated; an association is ineligible for EAJA fees if either aggregate figure exceeds the statutory limitations. Section 2412(d)(2), however, excepts agricultural cooperatives and tax-exempt organizations only from the net worth ceiling, not the employment size limitation. Clearly, this limited exception cannot support an implicit rule requiring the aggregation of employees and assets.

. We also reject USDA’s related argument that NAWGA is ineligible for a fee award because NAWGA’s members received a "free ride” in the APA litigation. In State of Louisiana, Ex. Rel. Guste v. Lee, we held that in special circumstances, participation in litigation by an eligible party may make an EAJA award for other eligible parties unjust. 853 F.2d 1219, 1225 (5th Cir.1988). This is so where the claimant for attorneys' fees is an eligible party who takes a "free ride” through litigation by joining an ineligible party who is "fully willing and able to prosecute the action against the United States.” Id. In contrast, we concluded that "if the ineligible party’s participation is nominal or narrow, then the eligible parties should- not be denied the access that Congress sought to ensure by enacting the EAJA.” Id.
As USDA concedes, the "free-rider” analysis in Guste is limited to suits prosecuted against the United States by co-plaintiffs who both are eligible and ineligible, respectively, for EAJA fees, a situation not present here.